Dorothy PONDER *v.* Don Leroy CARTMELL, et al.

89-170                                                    784 S.W.2d 758

Supreme Court of Arkansas
Opinion delivered February 26, 1990
[Rehearing denied April 16, 1990.*]

*Steven L. Festinger*, for appellant.
*Wright, Lindsey & Jennings*, for appellees.

---

*Hays and Turner, JJ., would grant rehearing.

DARRELL HICKMAN, Justice. Dorothy Ponder was injured when the bus in which she was riding was involved in an accident. She sued the bus driver, Don Cartmell, and Ozark Coaches Sales and Service, the owner of the bus. The case went to trial on the sole issue of damages, liability having been admitted. The jury awarded Mrs. Ponder $25,000. On appeal, she challenges certain evidentiary rulings by the trial court which affected the jury's assessment of damages. We find error and reverse and remand.

In her complaint, Mrs. Ponder claimed she sustained injuries to various parts of her body, including her back, neck, and left breast. Immediately following the accident, she was examined by Dr. Livingstone, a general practitioner. The doctor prescribed treatment for her injured breast, then referred her to specialists for a mammogram. Apparently, there was no other treatment of the breast injury until nearly two years later when Mrs. Ponder was examined by Dr. Pike. Dr. Pike discovered fibrocystic disease in the breast and performed surgery. In a letter to Mrs. Ponder's attorney, Dr. Pike said he doubted the accident had any relation to the development of the disease. The first issue involves the appellees' use of this letter at trial.

The appellees had filed a motion *in limine* asking that the breast injury not be mentioned. The trial judge agreed that evidence of the breast surgery and Mrs. Ponder's resulting fear of developing breast cancer should not be admitted. However, he did not prohibit evidence of Mrs. Ponder's treatment by her general practitioner and the doctors who performed the mammogram.

During Mrs. Ponder's testimony about her injuries, she did not mention the breast surgery performed by Dr. Pike nor did she ask the jury to award her damages for the expenses incurred in Dr. Pike's treatment. However, on cross-examination, the appellees introduced Dr. Pike's opinion letter and attempted to discredit Mrs. Ponder's testimony with it. Mrs. Ponder objected, saying that she had not presented any evidence of her treatment by Dr. Pike.

The court allowed the letter to be introduced into evidence because the appellant had "opened the door" on the subject. In fact, it was the appellees who first mentioned the surgery performed by Dr. Pike. Their use of the letter created the impression that Mrs. Ponder was seeking damages for injuries

which her own doctor realized were not caused by the accident. The appellees introduced a collateral matter into evidence, then used it to impeach Mrs. Ponder's testimony. The court should not have allowed this to take place. *See Garst v. Cullum*, 291 Ark. 512, 726 S.W.2d 271 (1987).

This error alone would be sufficient to warrant reversal, but we also base our decision on another evidentiary error committed by the court. Mrs. Ponder's treating physician, Dr. Richard Jordan, testified that Mrs. Ponder had a degenerative disc disease in her neck which was aggravated by the accident. He performed two surgical procedures on her—an anterior scalenotomy and a discectomy—and testified that the treatment was necessitated by the injury she received in the accident.

The appellees presented an expert witness, Dr. Thomas Fletcher, who disagreed with Dr. Jordan's testimony. Dr. Fletcher's testimony emphasized three things. First, he said the appellant had only suffered a neck sprain and lower back sprain in the accident; second, he said the accident did not cause or aggravate the appellant's degenerative disc problem. In other words, he disagreed that the bus accident caused the injuries to the discs in the appellant's neck. There is no problem with this aspect of Dr. Fletcher's testimony. Certainly, a defendant's medical expert may testify that the physical injuries for which the plaintiff seeks compensation were not caused by the accident. *See Shemman v. American Steamship Co.*, 89 Mich. App. 656, 280 N.W.2d 852 (1979). But Dr. Fletcher's testimony went beyond this. In the third aspect of his testimony, Dr. Fletcher told the jury that Dr. Jordan misdiagnosed the appellant's symptoms and that this misdiagnosis led to unnecessary surgery. He disagreed that the scalenotomy was the proper treatment for the appellant's continuing complaints of neck pain, saying an anterior scalenotomy was "not indicated for muscle spasm alone or pain alone." He also said that the discectomy was not a proper treatment for the appellant's neck problems, saying "discectomy is not indicated for degenerative disc disease alone." Dr. Fletcher said he would not have performed either operation. It is this part of Dr. Fletcher's testimony that the appellant says should not have been admitted into evidence, and we agree.

The appellant's recovery should not be diminished

because Dr. Jordan's misdiagnosis, if indeed that was the case, led to the use of extreme medical procedures. Given Dr. Fletcher's testimony, the jury might have determined that the appellant should have been treated more conservatively and that surgery was an extreme or unnecessary measure. This violates the principle that, so long as an individual has used reasonable care in selecting a physician, she is entitled to recover from the wrong-doer to the full extent of her injury, even though the physician fails to use the remedy or method most approved in similar cases or adopt the best means of cure. *See* Am.Jur.2d *Damages*, § 536. This principle is also recognized in Restatement (2d) Torts, § 457, Illustration 1:

> A's negligence causes B serious harm. B is taken to a hospital. The surgeon improperly diagnoses his case and performs an unnecessary operation. . . A's negligence is the legal cause of the additional harm which B sustains.

*See also O'Quinn* v. *Alston*, 213 Ala. 237, 104 So. 653 (1925) (where treating surgeon amputated finger, it was error to ask defense expert whether amputation was necessary); *Whitaker* v. *Kruse*, 495 N.W.2d 223 (Ind. App. 1986) (Plaintiff may recover expenses of unnecessary surgery).

It is true that a plaintiff who seeks to recover medical expenses must prove the expenses are reasonable and necessary. *Kay* v. *Martin*, 300 Ark. 193, 777 S.W.2d 859 (1989). "Necessary" means causally related to the tortfeasor's negligence. *See Bell* v. *Stafford*, 284 Ark. 196, 680 S.W.2d 700 (1985). If a plaintiff proves that her need to seek medical care was precipitated by the tortfeasor's negligence, then the expenses for the care she receives, whether or not the care is medically necessary, are recoverable.

We will briefly address two issues which may arise upon retrial. Two exhibits entered into evidence by the appellees clearly mentioned the appellant's insurance coverage. Reference to insurance should be deleted if the exhibits are used on retrial.

A surveillance tape, showing some of the appellant's daily activities, was entered into evidence by the appellees over the appellant's objection. We find the tape was admissible. The tape showed the appellant walking past a Social Security benefits

sign, but she explained that she was procuring benefits for her mother, not herself. That the tape depicted only a selected portion of two days of appellant's life is not an argument against admissibility of the tape, but a factor to be weighed by the jury. Also, on retrial, appellant should receive any tapes to which she was not previously given access.

Finally, there was no error in the court's failure to compel the appellees to answer certain interrogatories and deposition questions.

Reversed and remanded.

HOLT, C.J., HAYS and TURNER, JJ., concur in part and dissent in part.

OTIS H. TURNER, Justice, concurring in part; dissenting in part. I agree with the majority that it was error for the trial court to admit into evidence the report of Dr. Pike. For that reason this cause should be reversed and remanded. However, I disagree that the second point argued by the appellant, concerning the admissibility of the medical expenses, warrants reversal.

The majority opinion correctly acknowledges our longstanding rule that the medical expenses recoverable by the plaintiff must be found to be reasonable and necessary, but then ignores the "reasonable" requirement of the two-pronged test. Reasonable in relation to what? I perceive the test to be whether the medical expenses were reasonable in relation to whatever injury resulted from the negligence of the defendant as proved by the plaintiff and as found by the trier of fact. Under our advocacy system, the plaintiff must prove an injury occasioned by defendant's negligence, medical treatment as a result of that injury, that the medical treatment procured was *both* reasonable and necessary and last, the amount of money necessary to reimburse the plaintiff for all reasonable and necessary medical expense, if any, which the trier of fact finds was occasioned by defendant's negligence.

Whether or not a tortfeasor's negligence causes the medical care and resulting charges is a question for the jury. Just because the plaintiff says it's so, and just because the plaintiff's physician says it's so, does not alone prove the issue — and, where controverted, it remains an issue for the jury to determine. The

burden is on the plaintiff not only to show that *any* treatment was reasonable and necessary, but also that the specific treatment for which the plaintiff seeks compensation and the charges for that treatment were reasonable and necessary under the circumstances. *Kay* v. *Martin*, 300 Ark. 193, 777 S.W.2d 859 (1989).

Dr. Jordan testified that he tried to eliminate the appellant's symptomology by performing an anterior scalenotomy, a procedure designed merely to produce symptomatic improvement. He also requested a diagnostic study known as an MRI. This study indicated some evidence of degenerative disc disease. The appellant did not have a herniated disc, but a degenerative one, without evidence of any nerve-root compression. She did not exhibit any radicular neurologic deficit. Thereafter, a discogram at two levels of the neck was performed and the test, run at levels C-5 and 6 and C-6 and 7, showed that she had similar pain from both 5 and 6. Dr. Jordan states that he now has three pieces of evidence that indicate some relationship between the disc spaces at 5-6 and 6-7 to her pain, and, based on those results, he elected to remove the two discs and fuse the vertebra at those levels. For all of this treatment and other treatment, substantial medical bills were incurred for which the appellant claims compensation.

On cross-examination Dr. Jordan stated that the myelogram which he had performed did not indicate bulging discs; instead, he said there is an impingement on the contrast over the disc which is the same thing as a bulging disc. He also admitted that his consultation notes recorded that, having reviewed the myelogram, he felt that, other than a very small defect at C-6/7, the myelogram was normal and the small defect did not contribute to the appellant's syndrome. Dr. Jordan then testified that he certainly thought she had a neck sprain and a bulging disc.

Defendant called Dr. Thomas M. Fletcher, who had given a report based on his review of the records and had subsequently examined the appellant. Dr. Fletcher testified that degenerative disc disease is a wear-and-tear phenomenon that is a consequence of aging rather than trauma. Dr. Fletcher also stated that the surgical procedure called scalenotomy is an operation that has generated considerable controversy and is now infrequently performed.

Where there is degeneration of the disc, the disc will usually

bulge, and it is very common to see, in the lower back of a person aged 40 or over, bulges from the intervertebral discs. They appear on myelograms and are nothing more than a degenerative aging change. Dr. Fletcher testified that his diagnosis of the appellant's condition was that her injury had been a cervical or neck and lower-back sprain injury and that this had occurred independent of her pre-existing degenerative disc disease. Further, with severe sprains, a patient is usually put to bed and subsequently wears a neck collar. Dr. Fletcher's opinion was that the appellant suffered a cervical sprain, together with a lower-back or lumbosacral sprain, but did not have a bulging disc according to the studies run for Dr. Jordan which he had examined. Rather, she had a degenerative disc. The significance, of course, is that the presence or absence of a bulging disc determines the course of treatment and management of the case.

Dr. Fletcher concluded that the appellant did not have clinical indications calling for scalenotomy because there was no neurological indication that she had compression of the nerves. He also opined that the records did not indicate that a cervical discectomy was required. A discectomy is necessary if there is nerve-root compression or spinal cord compression, but none of the sort was found in the appellant. Further, based on the myelogram and other test results, he did not see any clinical indication of a cervical condition at the C5-6 level, and in his opinion the appellant did not exhibit any injury to the body of her cervical spine in connection with this accident, other than a cervical sprain.

The majority is holding that, so long as an individual has used reasonable care in selecting a physician, the claimant is entitled to recover from the wrong-doer to the full extent of his injury, even though the physician fails to use the remedy or method most approved in similar cases or to adopt the best means of cure. Again, this presupposes an injury as diagnosed by the treating physician. This is an improper and unwarranted supposition but is a question to be resolved by the factfinder under proper instructions. For authority for the above proposition, the majority cites *E.L. Bruce* v. *Corbett*, 188 Ark. 962, 695 S.W. 270 (1930). The *Bruce* case, however, says no such thing. In *Bruce*, the court said only that the damages may *not* be diminished by showing that more skillful treatment would have produced better *results*.

That is not the issue here. The issue here is the cost of the treatment and whether or not the treatment that was given, and for which the appellees are being charged, was needed *at all*. This is, quite simply, a question for the jury.

HOLT, C.J., and HAYS, J., join.