Carl William DIVELBLISS *v.* Laverne SUCHOR and Renell Suchor

92-164                                841 S.W.2d 600

Supreme Court of Arkansas
Opinion delivered November 9, 1992

10

*Barber, McCaskill, Amsler, Jones & Hale, P.A.*, for appellant.

*Marc I. Baretz*, for appellees.

ROBERT H. DUDLEY, Justice. We affirm the trial court's denial of a motion to set aside default judgments in this case. In late November, 1989, plaintiff Laverne Suchor was standing inside a boom bucket, or cherry picker, atop a truck while stringing the city's Christmas lights on Missouri Street in West Memphis. Defendant Carl Divelbliss was driving a tractor-trailer that was owned by co-defendant, Monroe Contractors Equipment, Inc. Royal Insurance Co. carried liability insurance on the tractor-trailer. The tractor-trailer, while being operated by Divelbliss, struck the plaintiff's rig, causing him to fall twenty to thirty feet to the ground and suffer severe and permanent injuries.

Plaintiff initially contacted an attorney in Memphis, but subsequently secured Arkansas counsel, Kent Rubens and Marc Baretz. On June 6, 1990, Rubens and Baretz filed suit for plaintiffs Laverne Suchor and Renell Suchor, husband and wife, against defendant Divelbliss and co-defendant Monroe Contractors. At about the same time, Lea Shedlock, a claims representative for Royal Insurance, contacted Rubens by phone. On June 8, 1990, Rubens wrote Lea Shedlock to advise her that he and Baretz represented plaintiffs. The material part of the letter is as follows:

> We have taken over representation, and as I told you we have filed a complaint, a copy of which is enclosed. We have not sought to obtain service; however, our clients

insist that we either show progress or we should proceed with it. We will forward the medicals to you as soon as possible.

On June 19, 1990, Ms. Shedlock, the claims representative, responded, in part, as follows:

As we discussed, when I am in receipt of the medicals, I will be in contact with your office. Also, please forward your theory of liability. As of this date, I do not have your client's version as to how this incident occurred.

I look forward to reaching a timely and equitable resolution.

On June 25, 1990, Rubens responded, in material part, as follows:

With regard to your request for a statement of liability, it seems that we have set that out in the pleading which I sent you. You want a statement from our client, but I am sure you realize that it will be in conformity with the allegations of the complaint. We are getting together all the medicals and the medical expenses for review, and we will be sending them to you shortly.

Between June 25 and August 1, there was no communication from Ms. Shedlock to Rubens or Baretz, and, on August 1, 1990, Rubens attempted to have service of process upon both Divelbliss and Monroe Contractors. Service was never had on Monroe Contractors, but was perfected on Divelbliss on August 4, 1990. Divelbliss immediately give the summons and copy of the complaint to his employer, Monroe Contractors, who immediately forwarded the documents to Interstate Motor Carriers, the independent insurance agent for Monroe Contractors. The agent received the summons and complaint on August 8, 1990. The record does not disclose when the agent forwarded the summons and complaint to Royal Insurance, but it does show that the agent had not forwarded these documents by January 8, 1991, five months later. Obviously, Divelbliss was in default long before the agent forwarded the summons and complaint to the insurance company.

On September 18, 1990, Royal sent a letter to Rubens

requesting medical reports, and on January 8, 1991, Royal sent letters to Monroe Contractors and Interstate Motor Carriers, the agent, warning of the possibility of a lawsuit.

On February 4, 1991, the trial court granted default judgments as to liability against Divelbliss since service had been perfected but no answer had been filed. The trial court heard evidence in open court on the amount of damages, and found that plaintiff Laverne Suchor had suffered damages in the amount of $200,000, and that plaintiff Renell Suchor had suffered damages in the amount of $25,000. Judgments were entered accordingly. On May 17, 1991, Rubens notified Royal that the judgments had been taken, and three months later, on August 22, 1991, Royal took its first action when it caused Divelbliss to file a motion to set aside the default judgments. The motion was denied and Divelbliss appeals.

Appellant first argues that the trial court committed reversible error in refusing to set aside the default judgments in their entirety. His argument centers around the recently amended A.R.C.P. Rule 55. On December 10, 1990, we amended Rule 55 by making it more lenient, and allowing more discretion to trial courts in deciding whether to enter a default judgment. The amendment changed paragraph (a) to read:

> When a party against whom a judgment for affirmative relief is sought has failed to appear or otherwise defend as provided by these rules, judgment by default *may* be entered by the court.

(Emphasis supplied.) Previously, the last clause of the paragraph read, "judgment by default *shall* be entered by the court." (Emphasis supplied.)

Old Rule 55(c) listed the following factors that could warrant setting aside a default judgment: "Excusable neglect, unavoidable casualty, or other just cause." The new Rule 55(c) reads as follows:

> The court may, upon motion, set aside a default judgment previously entered for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) the judgment is void; (3) fraud, misrepresentation, or other misconduct of an adverse party; or (4) any other reason

justifying relief from the operation of the judgment.

The new rule is more liberal in its treatment of default judgments and represents a preference for deciding cases on the merits rather than technicalities. Ark. R. Civ. P. 55 reporter's note (1990).

█ The amended rule is a procedural rule, is remedial in nature and, accordingly, should be given retroactive effect. *Forrest City Machine Works* v. *Aderhold*, 273 Ark. 33, 616 S.W.2d 720 (1981). In addition, the effective date of the amended rule was before the date of the default judgments, and therefore, the amended rule is the applicable rule. Even applying the amended rule, the judgments on the issue of liability must be affirmed. We recently discussed the amended rule in *B & F Engineering, Inc.* v. *Controneo*, 309 Ark. 175, 830 S.W.2d 835 (1992). There, the agent for the insurance company received two summonses and complaints in two different actions stemming from the same accident. When the agent received the second summons and complaint, he mistakenly thought that the answer filed in response to the first suit also answered the second, and, as a result, failed to forward the second summons and complaint to the insurance company's counsel. Our holding affirmed the trial court's order granting default judgments. In reaching our decision, we held that the standard of review was whether the trial court abused its discretion, and we said that standard required us to consider the nature of the mistake causing a failure to respond on a case by case basis. Here, the insurance agent received a copy of the summons and complaint but did nothing with those documents for, at the very least, five months. There is no showing that the agent made an excusable mistake, or that there was some inadvertent occurrence, or that any excusable neglect took place. The trial court found, "The agent apparently did not tend to business." The proof in the record discloses nothing more than carelessness on the part of the agent, and, on such proof, the trial court ruled correctly in refusing to set aside the default judgments.

█ Appellant also argues that the trial court erred in refusing to set aside the default judgments because Kent Rubens, the plaintiffs' attorney, was guilty of misconduct. Appellant states:

The correspondence between Ms. Shedlock [the claims adjuster]·and appellees' [plaintiffs'] attorneys reveal that the parties were working in a cooperative manner (at least in her mind) and that she was reasonable in expecting to be advised of service. Appellant submits that such failure to advise Ms. Shedlock that service had been obtained on Divelbliss constitutes "misconduct of an adverse party" sufficient to set aside the default judgment under Rule 55 (c) (3).

In her affidavit of August 16, 1991, which was made a part of the motion to set aside the default judgments, Ms. Shedlock stated that she had a phone conversation with Rubens, and received the quoted letter and her understanding was that plaintiffs' attorney "would withhold from obtaining service of process and advise me if and when service of process was obtained . . . . "However, the letter alone simply did not state that Rubens would notify her when service was obtained. Rather, the material part of it provides: "We have not sought to obtain service; however, our clients insist that we either show progress or we should proceed . . . ." The record does not reveal the content of the phone conversation. It does reveal that, in preparation for the hearing on the motion to set aside the default judgments, the plaintiffs sought to obtain specific information from Ms. Shedlock about the phone conversation. By interrogatory plaintiffs asked: "Do you have any notes, diaries, memoranda of any phone conversations with the plaintiffs' counsel concerning the above styled lawsuit?" Divelbliss responded:

Objection, Rule 33 of the Arkansas Rules of Civil Procedure provides that Interrogatories may be served upon and answered only by parties to the lawsuit. Lea Shedlock is not even a named party to this lawsuit, no service has been obtained upon her and·the Court has thereby acquired no jurisdiction over her person . . . . Therefore, to the extent that these discovery requests seek information from . . . Lea Shedlock, they are objectionable.

Ms. Shedlock refused to answer the interrogatory set out and refused to answer similar others. In sum, we cannot say the trial court was clearly erroneous in its implied ruling that there was no

"misconduct" on the part of the plaintiffs' lawyer, or that the trial court abused its discretion in its clear ruling that alleged "misconduct" on the part of the plaintiffs' attorney was not the cause of the Divelbliss default. The trial court sagaciously observed that the cause of the default was not Rubens' letter, but instead the cause was the failure of the agent to forward the summons and complaint.

Appellant next argues that the trial court erred in refusing to set aside the default judgments because Divelbliss was not given three days written notice of the application for the judgments. A.R.C.P. Rule 55(b) provides that if the party against whom the default judgment is sought has *appeared* in the action, he shall be served with written notice at least three days prior to the hearing on the application. Appellant tacitly admits that Divelbliss did not answer within the time specified, but contends that Ms. Shedlock's contacts with Rubens constituted an "appearance" and, as authority for the contention, cites the case of *H. F. Livermore Corp.* v. *Aktiengesellschaft Gebruder Loepfe*, 432 F.2d 689 (D.C. App. 1970). While the contacts in *Livermore* were much more extensive than the contacts in this case, and we could distinguish this case on that basis, we decline to do so because we choose not to follow the reasoning of that court.

We have cases decided before the adoption of the Arkansas Rules of Civil Procedure that hold that an "appearance" can be something other than the filing of a written pleading. For example, a defendant asking for a continuance constituted an appearance in *Price* v. *Shope*, 212 Ark. 420, 206 S.W.2d 752 (1948). In *Spratley* v. *Louisiana & Arkansas Railway Co.*, 77 Ark. 412, 416, 95 S.W. 776, 777 (1906), we wrote:

> There is no doubt but that where a party, who has not been served with summons, answers, consents to a continuance, goes to trial, takes an appeal, or does any other substantial act in a cause, such party by such act will be deemed to have entered his appearance.

The rationale is that the "appearance" was sufficient to constitute an implied waiver of the service of process. *Price* v. *Shope*, 212 Ark. at 421, 206 S.W.2d at 752. "Appearance" in all of our cases designates some overt act by which a party against whom a suit has been commenced submits himself to the jurisdiction of the

court. Here, there was no act by which Divelbliss can be said to have impliedly waived the service of process or voluntarily submitted to the jurisdiction of the court prior to service. He took no action in court after service that would indicate an appearance. To the contrary, when his arguments are analyzed, they are the antitheses of a waiver of service. In this appeal, Divelbliss argues that the regular service of process was not sufficient, standing alone, to bring him within the jurisdiction of the court, but rather, in addition to that regular service, Rubens, because of his alleged misconduct, had a duty to notify the claims representative of service before Divelbliss could be brought within the jurisdiction. Below, he argued that Ms. Shedlock did not have to respond to an interrogatory as she was neither a party, nor within the jurisdiction of the court. These arguments are diametrically opposed to the concept that Divelbliss waived service of process through some act by Ms. Shedlock. In sum, Divelbliss did not make an appearance in the trial court until he filed a motion to set aside the default judgments.

■■ Appellant's final argument is that the judgments should be reversed with respect to the damages. Generally, whether a defaulting defendant is entitled to notice of a hearing on the amount of damages is a matter of state, not federal, law. Annotation, *Defaulting Defendant's Right to Notice and Hearing as to Determination of Amount of Damages*, 15 A.L.R.3d 586 (1967). In Arkansas, a default judgment establishes the liability, but not the amount of damages. A hearing is required to determine the amount of damages, and the plaintiff is required to introduce evidence of the damages. *B & F Engineering* v. *Controneo*, 309 Ark. 175, 830 S.W.2d 835 (1992). Some jurisdictions require that notice of the hearing be given to a defaulting defendant even when he has never appeared, see synopsis of cases in *Defaulting Defendant's Right to Notice, supra*, § 3, but the Arkansas rule, A.R.C.P. Rule 55(b), does not require that notice be given to a defaulting defendant who has not appeared. Perhaps the reason is that it would be superfluous to again serve a defendant who already received one notice but failed on an ongoing basis to respond. Because Divelbliss did not timely file an answer, and because he did not make a subsequent appearance, the plaintiffs were entitled to the default as to liability without further notice, and subsequently, upon proving their damages,

they were entitled to the judgments in the amounts proven. The trial court did not err in refusing to set those judgments aside.

Affirmed.