Candis YOUNG *v.* Maria BARBERA

05-778                                          233 S.W.3d 651

Supreme Court of Arkansas
Opinion delivered April 13, 2006

*Oscar Stilley*, for appellant.

No response.

R OBERT L. BROWN, Justice. Appellant Candis Young appeals from her award of damages following a default judgment on liability. Her sole point on appeal is that the circuit court erred in reducing her damages for medical costs from $7135 to $4500. We agree that the circuit court did err, and we reverse the judgment with respect to medical costs and remand with directions to amend the judgment in accordance with this opinion.

On October 6, 2003, Ms. Young filed her complaint against the appellee, Maria Barbera. In it, she alleged that she was "unexpectedly and brutally attacked" in Fort Smith by Ms. Barbera while at another's residence. Ms. Young further alleged that Ms. Barbera punched and scratched her face, held her down by sitting on her, seized fistfuls of hair, and violently jerked her head up and down and from side to side. Ms. Young alleged that, as a result, she had bleeding on her scalp and a loss of hair.

Because of the attack, Ms. Young asserted that she required medical treatment for spinal injuries. She stated that she was treated at Abacus Rehabilitation in Fort Smith from October 30,

2002, through July 23, 2003, and incurred $7135 in medical costs. She further alleged physical pain, mental distress, and disfigurement. She prayed for $35,000 in compensatory damages and $15,000 in punitive damages.

Ms. Barbera filed a *pro se* answer. While the entire answer is not included in the Addendum or the record, it appears that she answered that both women were at fault, and she admitted that she could "not plead innocent to all parts of the situation, because to an extent I am responsible for any occurrences that result from my bad decision making." Subsequently, Ms. Young moved to strike the answer and for entry of a default judgment. On April 22, 2004, the circuit court entered an order granting Ms. Young's motion for a default judgment as to liability.

On June 4, 2004, the circuit court held a hearing on the issue of damages resulting from that liability. Ms. Barbera did not appear at this hearing; nor did her attorney appear and present a case on her behalf. At that hearing, Ms. Young testified that the day after the assault, she sought treatment from Dr. Roberts of Abacus Rehabilitation, which continued for nine months. She stated that she had never before received chiropractic treatment; nor had she received treatment since then. She testified that she sought treatment, because after the incident, she could hardly move her head in either direction; nor could she drive for two or three weeks because she was unable to turn her head or bend her neck.

Ms. Young further testified that when she began seeing the chiropractor, she was going three times a week, for about a month or two. After that, the visits were twice a week, then once a week, then once every other week, until she was released. Ms. Young introduced as a plaintiff's exhibit an itemized bill from her chiropractor of each treatment received, the date, and the cost of the treatment. The bill totaled $7135, part of which had been paid, according to Ms. Young. She told the court that the chiropractor did provide her the relief for which she was looking.

On questioning from the circuit court, Ms. Young testified that she did not go to the emergency room or receive any medication or see a medical doctor. She stated that Dr. Roberts told her to keep coming for nine months and that she believed her parents' insurance company paid close to $1000 of the bill, or slightly more. This colloquy with the court then followed:

> THE COURT: It took this chiropractor nine months to get your neck where it was feeling better?

Ms. YOUNG: Yeah. They did an x-ray of my back and it had these things called subluxations and it's where the vertebrae in your back will get kind of crooked instead of being aligned straight, so it had like ten subluxations, I think —

THE COURT: Uh-huh — really. All right. You can step down.

At the conclusion of the hearing, the circuit court made its ruling and said in part:

Well, Mr. Stilley [plaintiff's counsel], I see a lot of personal injury cases, a lot of cases involving chiropractic bills. Almost never do I see one where the treatment for a sore neck has gone on for nine months.

The court has to find that the medical bills are reasonable and necessary, and I don't doubt that Ms. Young was injured as a result of, and that Ms. Barbera's attack was unprovoked. Without the doctor here telling me why this is reasonable and necessary medical expense for this incident, the Court is not convinced that they are all reasonable and necessary. I am convinced that there is a portion of it that is reasonable and necessary.

After the hearing, the circuit court entered a final judgment and awarded damages on June 17, 2004. The circuit court found that the medical bills of $7135 were excessive and held that that amount would not be allowed without expert testimony as to the need for such medical services. The court instead awarded Ms. Young $4500 for medical costs, $2500 for pain and suffering, and $1000 in punitive damages, for total damages of $8000, plus her filing fee and service fee. On June 24, 2004, Ms. Young filed a motion to amend the judgment pursuant to Ark. R. Civ. P. 52(b). In it, she prayed for the court to amend the judgment and she attached to the motion an affidavit from Dr. Roberts, which, she contended, established that all treatment was prescribed and necessary. She further asserted that the circuit court was not permitted under Arkansas law to reduce medical expenditures for services actually rendered by a competent medical provider.

The circuit court denied Ms. Young's motion and found that it could not consider evidence, such as the affidavit, not submitted at trial. Ms. Young appealed, and the court of appeals affirmed the circuit court. *See Young v. Barbera*, 92 Ark. App. 70,

211 S.W.3d 29 (2005). Ms. Young next petitioned for review of the decision by this court, which this court granted. On a petition for review, this court considers the case as though it was originally filed in this court. *See, e.g., Wallace v. West Fraser South, Inc.*, 365 Ark. 68, 225 S.W.3d 361 (2006).

For her sole point on appeal, Ms. Young argues that this court does not allow the finder of fact to reduce the damages for medical treatment on the grounds that less aggressive treatment might have been sufficient. She contends that there was no proof that the treatment she received was excessive. Further, she urges that she tendered an affidavit from Dr. Roberts, stating that the treatment was necessary and proper for the well being of the patient. She further asserts that even if the treatment was excessive, the circuit court had no right to reduce the recovery on that ground. For these reasons, she requests that this court reverse and remand the circuit court's judgment with directions that the circuit court enter judgment for medical expenses in the amount of $7135, rather than $4500, plus the costs of appeal, leaving the remainder of the judgment intact. Ms. Barbera did not file a brief in response.

As an initial point, we emphasize that we are reviewing only the June 17, 2004 judgment with the damage award for medical costs and not the order denying the motion for amendment of judgment with the Roberts affidavit, because we agree with the circuit court that the affidavit filed with the motion was submitted too late for consideration.

When a case is tried with the circuit court sitting as the trier of fact, the standard of review on appeal is not whether there is substantial evidence to support the finding of the court, but whether the circuit court's findings were clearly erroneous. *See White v. McGowen*, 364 Ark. 520, 222 S.W.3d 187 (2006). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court, after reviewing the entire evidence, is left with a firm conviction that a mistake has been committed. *See id.* Resolution of disputed facts and determinations of credibility are within the province of the fact-finder. *See id.*

In this state, a default judgment establishes liability but not the amount of damages. *See Divelbliss v. Suchor*, 311 Ark. 8, 841 S.W.2d 600 (1992). A subsequent hearing is required to determine the amount of damages. *See id. See also* Ark. R. Civ. P. 55(b) (2005); *B & F Eng'g, Inc. v. Cotroneo*, 309 Ark. 175, 830 S.W.2d 835

(1992). While a defaulting defendant cannot introduce evidence to defeat the plaintiff's cause of action at a hearing on damages, the defendant retains the right to cross-examine the plaintiff's witnesses, to challenge the sufficiency of the plaintiff's evidence as to the amount of damages, and to introduce evidence in mitigation of damages. *See* Howard W. Brill, *Law of Damages* § 13-2, at 201 (5th ed. 2004) (citing *Clark v. Michael Motor Co.,* 322 Ark. 570, 910 S.W.2d 697 (1995)).

In support of her argument, Ms. Young relies on our decision in *Ponder v. Cartmell,* 301 Ark. 409, 784 S.W.2d 758 (1990). In *Ponder,* this court examined certain evidentiary rulings which Ms. Ponder claimed affected the jury's award of damages to her. In that case, Ms. Ponder claimed that the circuit court erred in allowing the defendant's expert to testify that she was misdiagnosed by her physician and that the misdiagnosis led to unnecessary surgery. This court agreed and held that Ms. Ponder's recovery should not be diminished because her physician's misdiagnosis, if indeed it was a misdiagnosis, led to the use of extreme medical procedures. This court further noted that given the expert's testimony, the jury might have determined that Ms. Ponder should have been treated more conservatively and that the surgery she received was an extreme or unnecessary measure and held that such "violates the principle that, so long as an individual has used reasonable care in selecting a physician, she is entitled to recover from the wrongdoer to the full extent of her injury, even though the physician fails to use the remedy or method most approved in similar cases or adopt the best means of cure." 301 Ark. at 412, 784 S.W.2d at 761.

We then discussed the concept of "reasonable and necessary" medical expenses and said:

> It is true that a plaintiff who seeks to recover medical expenses must prove the expenses are reasonable and necessary. *Kay v. Martin,* 300 Ark. 193, 777 S.W.2d 859 (1989). "Necessary" means causally related to the tortfeasor's negligence. *See Bell v. Stafford,* 284 Ark. 196, 680 S.W.2d 700 (1985). If a plaintiff proves that her need to seek medical care was precipitated by the tortfeasor's negligence, then the expenses for the care she receives, whether or not the care is medically necessary, are recoverable.

*Id.,* 784 S.W.2d at 761.

While our *Ponder* decision could certainly be construed to say that a plaintiff following a default on liability must also prove

that his or her medical expenses are reasonable and necessary, the fact of the matter is that the *Ponder* decision stemmed from a jury's award of damages following an admission of liability. Furthermore, the defendant in the *Ponder* case challenged Ms. Ponder's evidence as to medical expenses.

In contrast, Ms. Barbera, in the instant case, failed to appear at the damages hearing after her default on liability and failed to cross-examine Ms. Young's medical-cost evidence in any manner. Ms. Young, on the other hand, testified that she had a sore neck and that the chiropractic treatments had helped. In support of her claims, she introduced the chiropractor's full billing.

This court has held that in an action for assault and battery, the amount of damages was a question for the trier of fact. *See Jones v. Canon*, 282 Ark. 452, 669 S.W.2d 7 (1984). With respect to medical expenses in personal-injury cases, we have held that a party seeking to recover medical expenses has the burden of proving both the reasonableness and necessity of those expenses. *See Volunteer Transp., Inc. v. House*, 357 Ark. 95, 162 S.W.3d 456 (2004). We have also said that expert medical testimony is not essential in every case to prove the reasonableness and necessity of medical expenses. *See id.* In fact, in some cases, the testimony of the injured party alone can provide a sufficient foundation for the introduction of medical expenses incurred. *See id.*

The underlying principle of a damages award is to make the injured party whole. *See* Howard W. Brill, *Law of Damages*, § 4-1, at 44 (5th ed. 2004). Thus, a court must attempt to place the plaintiff in the position he would have been in if the wrong had not occurred. *See id.* (citing *National Lead Co. v. Magnet Cove Barium Corp.*, 231 F. Supp. 208 (W.D. Ark. 1964)). As already mentioned, Ms. Young presented the circuit court with her bill from Dr. Roberts which totaled $7135. She testified that the day after the attack by Ms. Barbera, she sought treatment from Dr. Roberts of Abacus Rehabilitation and that the treatment continued until he ultimately released her. She further testified that she had never before used Dr. Roberts or any other chiropractor.

The reasonableness and necessity of medical expenses are questions of fact to be decided by the fact-finder, but those damages will only be allowed if the plaintiff provides a sufficient evidentiary foundation. *See* Howard W. Brill, *Law of Damages*, § 4-5, at 54 (5th ed. 2004) (citing *Roy v. Atkins*, 276 Ark. 586, 637 S.W.2d 598 (1982)). It is evident that Ms. Young did just that.

Because it appears from Ms. Young's testimony that her treatment was both reasonable and necessary, and because there was no evidence indicating that the expenses Ms. Young incurred were unreasonable or unnecessary in contradiction of her testimony, the circuit court's reduction of the award of damages was clearly erroneous. Specifically, we disagree with the circuit court that it was a prerequisite to an award of damages for chiropractic care to have Dr. Roberts testify that the treatment he rendered was reasonable and necessary.

We reverse the damage award for medical costs and remand this matter to the circuit court with directions to enter judgment in the amount of $7135 for medical costs in lieu of $4500.

Reversed and remanded. Court of appeals reversed.

GLAZE, J., dissents.

TOM GLAZE, Justice, dissenting. I would affirm both the trial court and court of appeals' decision in this case. The issue before our court is whether the trial judge was clearly wrong when he determined that Candis Young was not entitled to *all* the medical expenses she incurred when being treated by Dr. Roberts, a chiropractor, for nine months after being attacked by Maria Barbera.[1] Young avered that she incurred $7,135 in medical expenses billed by Dr. Roberts, but after the hearing to determine damages, the trial judge awarded only $4,500 for her medical expenses.

Dr. Roberts did not testify at the hearing on damages; only Young did. She said that Barbera confronted her, "jumped on top of me, started punching me and pulling my hair, swinging me around [when] I got my foot up, pushed her off me, and ran away." Young continued, "[Barbera] actually pulled some of my hair out, scratched my face and left some bloody spots on my head." Young further said that on the day after the incident, she could hardly move her head in either direction, nor could she easily move her back or neck to drive. At the hearing, Young stated she was fully recovered. Young told the trial judge that she never went to the emergency room to see a medical doctor, nor had she received any medication. Asked by the trial judge whether her parents' insurance company paid on the bill, Young said the

---

[1] Barbera and Young had been friends, but apparently a dispute as to whether Young stole Barbera's brother's Play Station led to this fight.

insurance company paid a thousand dollars or a little over. On re-direct examination, Young could not recall Dr. Roberts saying that Young didn't have to pay the remainder of his bill if she did not win this civil lawsuit. On these facts, it is hardly surprising — and certainly not clearly erroneous — that the trial judge concluded that nine months of chiropractic treatment was unreasonable.

A party seeking to recover medical expenses in a personal-injury case has the burden of proving both the reasonableness and the necessity of those expenses. *See Volunteer Transport, Inc. v. House*, 357 Ark. 95, 162 S.W.3d 456 (2004). Moreover, our law is well settled that the reasonableness and necessity of medical expenses are questions of fact to be decided by a jury, or, as here, by a judge sitting as the trier of fact. *See Roy v. Atkins*, 276 Ark. 586, 637 S.W.2d 598 (1982); *Blissett v. Frisby*, 249 Ark. 235, 458 S.W.2d 735 (1970). The law is also established that a trial judge, as fact-finder, is the sole evaluator of credibility and is free to believe or disbelieve the testimony of any witness, *Schweck v. Burris*, 330 Ark. 780, 957 S.W.2d 702 (1997). And it has long been the rule that testimony of a party to an action, who is interested in the result, will not be regarded as undisputed as determining the legal sufficiency of the evidence. *Eggleston v. Ellis*, 291 Ark. 317, 724 S.W.2d 462 (1987).

Turning to the testimony presented by Young at the trial court hearing, she did refer to Dr. Roberts's bill, which reflects his treatment of Young and a total of $7,135; however, the mere fact that a plaintiff has incurred medical expenses and the defendant has admitted liability does not automatically translate into a damage award equivalent to those expenses. *See Depew v. Jackson*, 330 Ark. 733, 957 S.W.2d 177 (1997). In listening to Young and studying Dr. Roberts's bill, the trial judge expressed some doubts regarding whether Dr. Roberts overbilled. After all, the evidence suggested that Young's parents' insurance paid $1,000 or more of Roberts's charges, and Young testified that she "did not recall" whether Dr. Roberts said that Young did not have to pay the remainder if she did not win this lawsuit. The judge also questioned whether the length of the treatment had been warranted, commenting that he had seen a lot of personal injury cases involving chiropractic care, but had "almost never" seen one where the treatment for a sore neck lasted for nine months.

Obviously, the judge harbored doubts as to both Young's recollections bearing on the amount already paid to Dr. Roberts

by her parents' insurance company and whether any further payment would be required if she lost this case, and the reasonableness of the extent of the treatment. Rather than reducing the entire amount of medical expenses to $1,000, the judge awarded Young $4,500, which appears reasonable under the circumstances.

In addition to the above, I disagree with the majority's application of *Ponder v. Cartmell*, 301 Ark. 409, 784 S.W.2d 758 (1990). Young relied on *Ponder* for its statement that, "so long as an individual has used reasonable care in selecting a physician, she is entitled to recover from the wrongdoer to the full extent of her injury, even though the physician fails to use the remedy or method most approved in similar cases or adopt the best means of cure." *Ponder*, 301 Ark. at 412. I find that this statement stands in sharp contrast to two important principles announced by this court: first, the reasonableness of medical expenses is a question for the factfinder, *see Blissett v. Frisby*, 249 Ark. 235, 458 S.W.2d 735 (1970); and second, the mere fact that a plaintiff has incurred medical expenses and the defendant has admitted liability does not automatically mean that the plaintiff is entitled to a damage award equal to those expenses. *Depew v. Jackson*, 330 Ark. at 740.

Arkansas law is clear that a default judgment establishes liability *but not the extent of damages*. *Volunteer Transport, Inc. v. House*, 357 Ark. 95, 162 S.W.3d 456 (2004) (emphasis added); *Jean-Pierre v. Plantation Homes, Inc.*, 350 Ark. 569, 89 S.W.3d 337 (2002). In this state, a hearing is required after default in order to establish damages, and the plaintiff must introduce evidence to support damages. *Volunteer Transport, supra*; *Byrd v. Dark*, 322 Ark. 640, 911 S.W.2d 572 (1995). However, if *Ponder* is to be literally interpreted to mean that a plaintiff can simply introduce a billing statement to definitively establish her medical damages, then there would be no purpose in holding a hearing on damages once liability had been established; in addition, a plaintiff would not be required to prove both the reasonableness and the necessity of her treatments, so long as she had a doctor's bill in hand. This is not what our case law says, and for that reason, I cannot agree with the majority's conclusions.