**Freddie EDWARDS and Shannette Kirkwood, Appellants–Plaintiffs,**

v.

**Dale SISLER and Insync Uplinc, Inc., Appellees–Defendants.**

No. 45A03–9701–CV–3.

Court of Appeals of Indiana.

Feb. 18, 1998.

Peter J. Manous, John Kopack, Merrillville, for Appellants–Plaintiffs.

Kenneth E. Nowak, Buoscio, Pera, Kramer & Nowak, Merrillville, for Appellees–Defendants.

## OPINION

HOFFMAN, Judge.

This interlocutory appeal stems from a complaint by plaintiffs for damages caused when a car driven by Freddie Edwards, in which Shannette Kirkwood was a passenger, was struck by a truck driven by defendant Dale Sisler and owned by INSYNC UPLINC, INC. [collectively Sisler]. The trial court granted Sisler's motion for leave to amend his answer to include a nonparty defense based upon the medical malpractice of Kirkwood's treating physician for the negligent treatment of her injuries sustained in the collision. The facts relevant to review are recited below.

In June 1995, Kirkwood filed a complaint against Sisler for personal injuries she sustained in the collision of Edwards' car and Sisler's truck which had occurred in November 1994. After deposing Kirkwood, Sisler learned that the physician who treated Kirkwood for injuries sustained in the collision had performed a surgical procedure on the wrong leg.

In August 1996, Sisler moved to amend his answer to include a claim that Kirkwood's damages were caused in full or in part by a nonparty pursuant to IND. CODE § 34–4–33–10(a) (1993 Ed.), within Indiana's comparative fault act governing most tort claims.

Kirkwood objected to the amendment. She urged the court to determine that this Court's reasoning in *Whitaker v. Kruse,* 495 N.E.2d 223 (Ind.Ct.App.1986) survived adoption of Indiana's Comparative Fault Act.

The trial court allowed the amendment, then certified the matter for interlocutory appeal. This Court accepted the interlocutory appeal.

On appeal, Kirkwood relies upon *Whitaker* and the additional authority of *Holden v. Balko,* 949 F.Supp. 704 (S.D.Ind.1996) construing Indiana law. In *Whitaker,* this Court held that a jury instruction which stated in essence that a plaintiff could not recover for injuries if the evidence indicated that her physicians had misdiagnosed and/or mistreated her injuries was clearly erroneous. *Id.* at 227. This Court noted the Restatement (Second) of Torts § 457 (1965), quoting:

'If the negligent actor is liable for another's bodily injury, he is also subject to liability for any additional bodily harm resulting from normal efforts of third persons in rendering aid which the other's injury reasonably requires, irrespective of whether such acts are done in a proper or a negligent manner.'

*Id.* at 225.

The *Whitaker* court observed that adoption of this general rule occurred as long ago as 1915:

'It is undoubtedly true that one suffering a bodily injury by reason of another's negligence must use ordinary diligence and care in securing surgical aid, and failing in such duty, can not recover for ailments or diseases caused by such neglect.... But where ordinary care has been exercised in selecting a surgeon, the latter's unskillful treatment causing aggravation of the injury will not alone preclude a recovery by the plaintiff from the tortfeasor of damages for the aggravated as well as the original injury.... [The tortfeasor] created the necessity for a surgeon's services, and [the injured party], without negligence, obtained the necessary surgical attendance. The risks incident to such service were incurred because of [the tortfeasor's] fault, and the aggravation of the original injury, if any, by unskillful surgery, must be held the

proximate result of [the tortfeasor's] negligence.'

*Id.*, (quoting *Suelzer v. Carpenter*, 183 Ind. 23, 32, 107 N.E. 467, 470–471 (1915)). Traditionally, other jurisdictions have treated the question similarly. *See e.g. Ponder v. Cartmell*, 301 Ark. 409, 411–412, 784 S.W.2d 758, 760–761 (1990) (citing *Whitaker* for proposition that a plaintiff can recover even for unnecessary procedures in attempt to cure original injury); *Kolakowski v. Voris*, 94 Ill. App.3d 404, 412, 50 Ill.Dec. 9, 15, 418 N.E.2d 1003, 1009 (1981) (court granted new trial based in part on defendant's interjection of possible negligent treatment after defendant neurosurgeons' original surgery left plaintiff with quadraparesis stating: "a person who is injured through another's negligence can recover from the original tort-feasor not only for the original injury but for any aggravation of that injury caused by a physician's subsequent malpractice"); *Casey v. Koos*, 323 N.W.2d 193, 193 (Iowa 1982) (court found meritless defendant's request to introduce malpractice by treating physician, court reiterated rule that a "tort-feasor is responsible for the negligence of an attending physician in treating the injured party"); *Doyle v. Picadilly Cafeterias*, 576 So.2d 1143, 1150 (La.App.1991) (denying defendant's request that health care providers be joined in suit for original injuries caused during slip and fall at defendant's premises observing: "It is well-settled that a tort-feasor is responsible for personal injuries caused by the tort-feasor's negligence, even if such injuries were aggravated by the negligent or unskillful treatment of the injured person's attending physician"); *Fouse v. Persons*, 80 Wis.2d 390, 397–398, 259 N.W.2d 92, 95 (1977) (proper to instruct jury on defendant's liability for damages aggravated by health care provider's negligence).

According to Sisler, however, the rule of long-standing in Indiana was necessarily changed by Indiana's adoption of comparative fault in tort claims. IND. CODE § 34–4-33-10 (1993 Ed.) allows a defendant to assert an affirmative defense "that the damages of the claimant were caused in full or in part by a nonparty. Such a defense is referred to in this section as a nonparty defense." "Nonparty" is defined in IND. CODE § 34-4-33-2 (1993 Ed.) (section amended by P.L. 278–1995 effective July 1, 1995). *See Chesnut v. Roof*, 665 N.E.2d 7, 8–10 (Ind.Ct.App.1996) (amendment has prospective application only).

■ Addressing precisely the question at issue here, the court in *Holden v. Balko*, 949 F.Supp. 704, 714 (S.D.Ind.1996) found that a defendant could not name a health care provider as a nonparty to whom fault could be attributed. While this Court is not bound by a federal court's determination of Indiana law, the decision is instructive. The *Holden* court determined that Indiana's Comparative Fault Act did not supplant the long-standing rule in Indiana and that an original tortfeasor is responsible for the subsequent negligence of a health care provider who treats the plaintiff's injuries.[1]

Essential to the defendant's argument is the assertion that the act seeks to attribute fault proportionally to those actors who contributed to the damages.[2] The *Holden* court recognized the defendant's arguments but concluded that "the Comparative Fault Act did not change the settled law in Indiana

---

**1.** *See also Harka v. Nabati*, 337 Pa.Super. 617, 624–625, 487 A.2d 432, 435 (1985) (must be clear indication that by adopting comparative negligence law allowing contribution among negligent defendants, legislature intended to alter previous Pennsylvania rules). Correspondingly, courts have dealt with the issue whether a release of the original tortfeasor acts to release a subsequent medical care provider. Illinois reaffirmed its position by declaring that the original tortfeasor's responsibility for any aggravation of the injury caused by the subsequent negligence of a treating physician extends to a release of the original tortfeasor. *O'Keefe v. Greenwald*, 214 Ill.App.3d 926, 932–934, 158 Ill.Dec. 342, 346, 574 N.E.2d 136, 140 (1991) (court noted a split in the districts as to the release issue). In *Shad-*

*den v. Valley View Hosp.*, 915 P.2d 364, 368–371 (Okl.1996) and *Carmichael v. Beller*, 914 P.2d 1051, 1055–1059 (Okl.1996), the courts both found that, under the common liability portion of the negligence act, a general release of the original tortfeasor did not release subsequent health care providers because defendants were not jointly liable.

**2.** In *Holden*, the defendant claimed that physicians who render negligent treatment after an injury to the plaintiff would have been governed by the doctrine of intervening cause prior to the Comparative Fault Act. Pursuant to *L.K.I. Holdings, Inc. v. Tyner*, 658 N.E.2d 111, 119 (Ind.Ct. App.1995), the doctrine of intervening causes did

consistent with § 457 of the Restatement (Second) of Torts." *Id.* at 710. The court identified four rationales for the decision: 1) the legislature could have but did not specifically permit nonparty defenses by naming those who give aid, and neither the language nor the apparent purpose of the act indicates an intention to accomplish that result; 2) nothing in the act alters the policy considerations supporting § 457 of the Restatement; 3) the alteration of the general rule would interject a stranger into the doctor-patient relationship with an incentive to place the physician and patient at odds thereby eroding the relationship; and 4) while comparative negligence laws have been in effect in many states, the defendant did not present evidence that another state altered § 457 in light of the comparative laws. *Id.* at 710–713.

■ It is significant that the overriding reason offered for adoption of the act is to ameliorate the harshness of the former rule of contributory negligence which would not allow a slightly blameworthy plaintiff any recovery. In *Indianapolis Power v. Brad Snodgrass,* 578 N.E.2d 669, 672 (Ind.1991), our supreme court underscored the purpose of the act:

> The opinion of the Court of Appeals misconstrues the role of apportionment of fault. The primary objective of the Act is not to achieve proportional liability but to modify the harsh common law rule of contributory negligence.
>
> 'Furthermore, the nature of and procedures established by the Indiana Comparative Fault Act reveal that its primary function is to modify the common law rule of contributory negligence under which a plaintiff only slightly negligent was precluded from recovery of any damages, even as against a relatively highly culpable tortfeasor. In abrogating this harsh rule, the Act allows recov-

ery but reduces such recovery in proportion to any fault of the plaintiff which contributed to the damages. The contributory negligence defense·is partially retained as·the Act also generally precludes any recovery to a plaintiff with more than 50 percent fault. In furtherance of these objectives, the Act establishes a mechanism by which the factfinder is required to specifically determine the relative degree of the plaintiff's fault with respect to others. *This proportional allocation of fault is the means by which the Act's objectives are reached, not the ends to which it aspires.'*

*Id.* at 672, (emphasis added in *Indianapolis Power*)· (quoting *Bowles v. Tatom,* 546 N.E.2d 1188, 1190 (Ind.1989)).

■ As noted by the *Holden* court, it is not intended that the act will foster additional lawsuits. *Holden,* 949 F.Supp. at 712. Thus, while a plaintiff may choose to sue a negligent caregiver, the plaintiff should not be required to do so, nor should the decision be one made by the defendant. *Id.* A stranger to the physician-patient relationship should not have a stake·in scouring an injured party's medical records searching for some act of malpractice or negligence in order to extricate himself from all or some portion of the damages to the injured party. *Id.* at 711–712.

The decision of the trial court allowing the amendment to add the nonparty defense is reversed, and the cause is remanded for further. proceedings consistent with this decision.

Reversed and remanded.

STATON and DARDEN, JJ., concur.

not survive adoption of comparative fault because "[t]he comparison of fault inherent in the doctrine . . . has been incorporated into our comparative fault system.". According to the defendant, once the doctrine was subsumed into the act, the physician whose intervening conduct caused injury could be a nonparty defendant. However, prior to the act, an intervening cause was one which came "into active operation in

producing a result after the negligence of the defendant" which then absolves the defendant of liability for the injuries because his negligence is deemed remote. *Id.* at 119.

This argument is specious. . The separate negligence of a health care provider which did not in any way contribute to the original injury would not have been an "intervening cause" for the original injury prior to the act.