**Duane A. BURGE, Appellant–
Defendant,**

v.

**Christopher TETER and Michelle Teter, Individually and as Husband and Wife, and as Next Best Friends of Brittany Teter, Devin Teter and Jayme Teter, Minors, Appellees–Plaintiffs.**

**No. 49A02–0306–CV–544.**

Court of Appeals of Indiana.

May 11, 2004.

Richard P. Samek, Larry L. Barnard, Miller, Carson, Boxberger & Murphy, Fort Wayne, IN, Attorneys for Appellant.

Nathaniel Lee, Lee, Burns, Cossell & Kuehn, Indianapolis, IN, Attorney for Appellees.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

Christopher Teter and Michelle Teter (collectively "the Teters") filed a lawsuit

against Duane Burge on their own behalf and on behalf of their minor children for injuries they all sustained in a car accident.[1] A jury entered a verdict in favor of the Teters, and Burge appeals. Burge presents the following issues for our review:

1. Whether the trial court abused its discretion when it allowed a police officer to testify that Burge had run a red traffic signal before striking the Teters' vehicle.

2. Whether the trial court abused its discretion when it refused to give two of Burge's proposed final instructions.

3. Whether the trial court abused its discretion when it gave one of the Teters' proposed final instructions.

4. Whether the trial court abused its discretion when it denied Burge's motion for judgment on the evidence.

We affirm.

## FACTS AND PROCEDURAL HISTORY

On October 6, 2000, Christopher was driving westbound on 86th Street in Indianapolis, and his wife and two minor children, Brittany and Devin, were riding in the vehicle as passengers. Brittany and Devin were lying down in the rear passenger seat, unrestrained. As Christopher approached Moeller Road, he entered the left-turn-only lane and proceeded through the intersection with the traffic signal

showing a green arrow for his lane of travel. At some point while he was in the intersection, the green arrow changed to yellow. Before Christopher had completed the turn, Burge, who was traveling eastbound on 86th Street, ran a red traffic signal and struck the Teters' vehicle. Each of the Teters sustained injuries as a result of the accident and underwent medical treatment. Their aggregate medical bills totaled more than $36,000.

The Teters filed a complaint against Burge alleging that his negligence proximately caused their damages. A jury found in favor of the Teters, but assessed Burge only 78% fault. The damages award totaled $309,088.[2] This appeal ensued.

## DISCUSSION AND DECISION

### Issue One: Police Officer's Testimony

Burge first contends that the trial court abused its discretion when it allowed an investigating police officer to testify at trial regarding his opinion that Burge had run a red traffic signal prior to the accident. The admission or exclusion of evidence is a determination entrusted to the sound discretion of the trial court. *Shively v. Shively*, 680 N.E.2d 877, 880 (Ind.Ct.App.1997). We will reverse the trial court's decision only for an abuse of discretion. *Id.*

Burge challenges the following testimony given by Officer Robert Williams at trial on direct examination:[3]

---

1. Jayme Teter is listed as a plaintiff in this action, but nothing in the record indicates that Jayme was a passenger in the car at the time of the accident. Jayme is not a party to this appeal.

2. The trial court entered judgment in favor of each of the Teters as follows: Christopher—$ 26,069; Michelle—$226,013; Brittany—$16,212; and Devin—$40,794.

3. Burge has included a copy of the entire transcript in his appendix on appeal, duplicating the copy of the transcript already filed with this court. This practice is improper. Indiana Appellate Rule 50(A)(2)(d) and (g) clearly state that only certain *portions* of the transcript should be included in the appendix.

Q: Go ahead, tell us about the contributing factors and how you arrived at them.

A: After talking to the drivers—the independent witnesses—surveying the crash scene—the operation of the lights—the damage to the vehicles—it was my opinion that vehicle number 1, which was the S–10 pickup Mr. Burge was driving did, in fact, disregard an automatic signal and strike vehicle number 2.

Burge maintains that that testimony "was not admissible under [Indiana Evidence] Rule 701 because it was not based upon his perception, but rather was based upon the statements of the parties and witnesses to the accident." The Teters respond that the testimony was proper under the rule and, in the alternative, that Burge has waived the issue on appeal.

Indiana Evidence Rule 701 provides that if a witness is not testifying as an expert, his testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness's testimony or the determination of a fact in issue. But Burge did not make a specific objection on the basis of Rule 701 at trial. It is well-settled that a party may not present one ground for an objection at trial and assert a different one on appeal. *Lashbrook v. State,* 762 N.E.2d 756, 759 (Ind.2002). As such, we address whether Burge's objection to the challenged testimony was sufficiently specific to preserve the issue on appeal. *See, e.g., In the Matter of the Guardianship of Hickman,* 805 N.E.2d 808, 822 (Ind.Ct. App.2004) (holding appellant waived issue of admissibility of testimony where he failed to specifically object on basis of Rule 701 at trial; had argued in support of motion in limine that witness "[did] not

have the ability to testify on matters not involving admissible, personal knowledge.").

Burge made several different objections during the course of Officer Williams' trial testimony. The first objection relevant to our discussion occurred when Officer Williams testified regarding what two eyewitnesses, Kerry Rodgers and Byron Long, had told him regarding the accident. Burge objected as follows: "Judge, I'm going to object as the one witness [Long] hasn't testified so, therefore, it would be hearsay on behalf of this officer as to be reporting—as to what Mr. Long may have said." The trial court sustained that objection "as to Mr. Long" and admonished Officer Williams to "restrict [his] comments as to what the other one said."

Later, Burge objected to a question regarding what Officer Williams had listed on the accident report regarding the cause of the accident. Burge objected on the basis that Officer Williams could not give an opinion on the issue of fault. The trial court sustained that objection and stated: "I'm going to disallow the testimony just because it's something that's based on hearsay. Since he wasn't there and present at the scene of the accident—unless he can tie it directly to a witness."

The following excerpt of Officer Williams' testimony includes the remainder of Burge's objections relevant to our discussion:

Q: After talking with both parties, did you formulate any crash opinion—based upon your conversation with the two parties?

[Burge's counsel]: Judge, I'm going to *object as to relevancy.*

COURT: Sustained.

\* \* \*

Q: Now, as part of your training—are you trained to determine the contrib-

uting factors or pre-crash type position of vehicles and things of that nature?

A: Yes, we are. We are trained to survey the accident scene—skid marks—areas of impact—witness' statements—drivers' statements and from that we formulate a primary cause of the accident. We do not determine fault. We just list the determining factors of an accident.

Q: Okay, now tell us about the determining factors of this accident based upon your investigation.

A: The determining fact[or]s of this accident—

[Burge's counsel]: Judge, I'm going to object . . . [on the basis that] *his opinion is based on hearsay* and he wasn't at the scene.

COURT: Well, it was based on hearsay and now it is based on his investigation. I think he is sufficiently qualified as . . . an informed layman to formulate some of these conclusions here. How many accident sites have you investigated or been called out to do the report on in the course of your career?

WITNESS: In the course of my career I have probably investigated four or five hundred accidents. I am a fatal certified accident investigator. I'm involved in all fatals also in the County.

COURT: Okay. Well, I think you've got the sufficient training experience and education—

[Burge's counsel]: Judge, I'm sorry. May I ask preliminary questions with regard to his qualifications in that respect?

COURT: Normally I would say no, but I'll say yes to you.

\* \* \*

PRELIMINARY QUESTIONS [by Burge's counsel]:

Q: Deputy, at the scene on October 6, 2000—you took no measurements, correct?

A: No, I did not.

Q: In fact, your drawing wasn't to scale?

A: No, it was not.

Q: And the investigation at the scene was looking at where the vehicles were at, correct?

A: Correct.

Q: The points of impact?

A: Correct.

Q: And talking to the witnesses?

A: And skid marks—if there were any.

Q: And do you recall in this particular instance if there were any?

A: I do not recall that.

\* \* \*

Q: So you did no reconstruction of the accident—apart from just looking at where the vehicles rested and also points of impact?

A: No, I'm not a reconstructionist.

[Burge's counsel]: Judge, *I object.*

COURT: Overruled.

[Burge's counsel]: Thank you, your Honor.

COURT: For the same reasons. I mean—we're not talking about brain surgery here. We're not talking about reconstruction. We're talking about what it is, and what he knows from his experience. You guys [determine] the weight to give it, okay?

DIRECT EXAMINATION [continued]:

Q: Go ahead, tell us about the contributing factors and how you arrived at them.

A: After talking to the drivers—the independent witnesses—surveying the crash scene—the operations of the lights—the damage to the vehicles—it was my opinion that vehicle number one—which was the S–10 pickup Mr. Burge was driving, did, in fact, disregard an automatic signal and strike vehicle number two.

Q: And at this particular crash site was there ever—a severe—do you recall how severe the crash was?

A: Yes, it was.

(Emphases added).

Burge never made a specific reference to the requirement in Rule 701 that a skilled witness base his opinion on his own perceptions. He merely objected to the challenged testimony based on hearsay and relevancy. When the trial court began to explain that it felt that Officer Williams was experienced enough to give his opinion, Burge requested, and was granted, the opportunity to ask him preliminary questions. The trial court was satisfied, and we agree, that Officer Williams was able to testify as a skilled witness based on his training and experience. Burge never expressly asked the court to rule on the admissibility of his testimony under the first prong of Rule 701. As such, we conclude that Burge has waived the issue on appeal. *See Guardianship of Hickman*, 805 N.E.2d at 822. Burge did not afford the trial court an opportunity to rule on the admissibility of the challenged testimony under Rule 701, and, therefore, we cannot say that the court abused its discretion.

### Issue Two: Refusal of Proposed Jury Instructions

■■■ Burge next contends that the trial court abused its discretion when it refused to give two of his proposed jury instructions. The giving of jury instructions lies within the trial court's sound discretion, and we review the court's refusal to give a tendered instruction for an abuse of that discretion. *Elmer Buchta Trucking, Inc. v. Stanley*, 744 N.E.2d 939, 944 (Ind.2001). The test applied to review a trial court's decision whether to give a tendered instruction is: 1) whether the instruction correctly states the law; 2) whether there is evidence in the record to support giving the instruction; and 3) whether the substance of the instruction is covered by other instructions. *Id.* Moreover, one seeking a new trial on the basis of an improper jury instruction must show a reasonable probability that substantial rights of the complaining party have been adversely affected. *Id.*

Burge maintains that the trial court should have given the following proposed jury instructions:

Proposed Final Instruction No. 8

At the time of the occurrence being considered in this case, Indiana statute I.C. 9–21–8–30 provided as follows:

A person who drives a vehicle within an intersection intending to turn to the left shall yield the right of a way to a vehicle approaching from the opposite direction that is within the intersection or close to the intersection as to constitute an immediate hazard. After yielding and giving a signal as required by this chapter, the person that drives the vehicle may make the left turn, and the person that drives the other vehicles approaching in the intersection from the opposite direction shall yield the right of way to the vehicle making the left turn.

If you find from a preponderance of the evidence that any party violated this statute on the occasion in question and the violation was without excuse or justification, such conduct would constitute negligence to be assessed against that party.

Proposed Final Instruction No. 9

At the time of the occurrence being considered in this case, Indiana statute I.C. 9–21–8–24 provided as follows:

A person may not: (1) slow down or stop a vehicle; (2) turn a vehicle from a direct course upon a highway; or (3) change from one traffic lane to another; unless the movement can be made with reasonable safety. Before making a movement described in this section, a person shall give a clearly audible signal by sounding the horn if any pedestrian may be affected by the movement and give an appropriate stop or turn signal in the manner provided in sections 27 through 28 of this chapter if any other vehicle may be affected by the movement.

If you find from a preponderance of the evidence that any party violated this statute on the occasion in question and the violation was without excuse or justification, such conduct would constitute negligence to be assessed against that party.

We address each proposed instruction in turn.

■ We agree with the Teters that the evidence introduced at trial did not support the giving of Burge's proposed instruction No. 8. The language of Indiana Code Section 9–21–8–30 indicates that it applies to intersections where turn lanes are *not* controlled by separate traffic signals. In other words, where, as here, a driver in a turn lane has the right-of-way pursuant to a green arrow as he executes a turn, that driver is not required to yield the right-of-way to any other vehicle approaching the intersection. We conclude that the trial court did not abuse its discre-

tion when it refused to give Burge's proposed final instruction No. 8. *Cf. Turner v. Davis*, 699 N.E.2d 1217, 1222 (Ind.Ct. App.1998) (noting identical instruction was "poorly worded," but did not mislead jury when read in conjunction with instruction informing jury that driver with arrow has right-of-way), *trans. denied.*

■ We also agree with the Teters that the evidence did not support the giving of Burge's proposed final instruction No. 9. Again, the language of Indiana Code Section 9–21–8–24 indicates that it does not apply to a driver who has the right-of-way pursuant to a traffic signal. Burge has not demonstrated that his substantial rights were adversely affected by the trial court's refusal to give the instruction. *See Elmer Buchta Trucking, Inc.*, 744 N.E.2d at 944. We conclude that the trial court did not abuse its discretion when it refused to give Burge's proposed final instruction No. 9.

### Issue Three:  Instruction No. 13

■ Burge next contends that the trial court abused its discretion when it gave the Teters' proposed final instruction No. 13, which reads: "The failure of a party to wear a seatbelt or use a child restraint system does not constitute fault nor can it be utilized to reduce damages." Burge concedes that the instruction accurately states the law with regard to seatbelts, but he maintains that it inaccurately states the law with regard to child restraint systems. We cannot agree.

Indiana Code Section 9–19–10–7 provides that a front-seat passenger's failure to wear a seatbelt does not constitute fault and cannot be used to mitigate damages. Indiana Code Section 9–19–11–8 provides that a failure to properly restrain a child under the age of three [4] in a child passen-

---

4. Only one of the Teters' children, Devin, was under the age of three at the time of the collision.

ger restraint system "does not constitute contributory negligence." Burge maintains that because the child restraint statute does not also expressly preclude mitigation of damages, the Teters' proposed final instruction No. 13 inaccurately states the law.

Where, as here, the Comparative Fault Act ("the Act") applies, it operates to diminish a claimant's recovery by the amount of the claimant's contributory fault. *Smith v. Baxter,* 796 N.E.2d 242, 244 (Ind.2003) (citing Ind.Code § 34–51–2–6(a)). And for purposes of the Act, the term "fault" includes an unreasonable failure to mitigate damages. Ind.Code § 34–6–2–45(b). It follows that the statutory prohibition against using evidence of a failure to restrain a child in a moving vehicle to prove contributory fault necessarily prohibits using that evidence to prove a failure to mitigate damages. The phrase "and cannot be used to mitigate damages" in Indiana Code Section 9–19–10–7 is surplusage. Moreover, the undisputed evidence shows that Devin would have sustained fatal injuries if he had been restrained in compliance with the applicable statute. Thus, even assuming the instruction was not an accurate statement of the law, there is no evidence of a failure to mitigate Devin's damages, and Burge cannot show that his substantial rights were adversely affected by the instruction. We conclude that the trial court did not abuse its discretion when it gave the Teters' proposed final instruction No. 13.

### Issue Four: Judgment on the Evidence

Finally, Burge contends that the trial court abused its discretion when it denied his motion for judgment on the evidence on the issue of the Teters' medical bills. Judgment on the evidence is proper only "where all or some of the issues ... are not supported by sufficient evidence." *Smith,* 796 N.E.2d at 243 (quoting Ind. Trial Rule 50(A)). We look only to the evidence and the reasonable inferences drawn most favorable to the non-moving party, and the motion should be granted only where there is no substantial evidence supporting an essential issue in the case. *Id.* If there is evidence that would allow reasonable people to differ as to the result, judgment on the evidence is improper. *Id.*

In order to recover an award of damages for medical expenses, the party seeking to recover those damages must prove that the expenses were both reasonable and necessary. *Cook v. Whitsell–Sherman,* 796 N.E.2d 271, 277 (Ind.2003). This was traditionally proven by expert testimony. *Id.* But Indiana Rule of Evidence 413 provides a simpler method of proving the amount of medical expenses when there is no substantial issue that they are reasonable and were caused by the tort. *Id.* Rule 413 provides: "Statements of charges for medical, hospital or other health care expenses for diagnosis or treatment occasioned by an injury are admissible into evidence. Such statements shall constitute prima facie evidence that the charges are reasonable." If there is a dispute, of course the party opposing the medical expenses may offer evidence to the contrary, including expert opinion. *Cook,* 796 N.E.2d at 277. By permitting medical bills to serve as prima facie proof that the expenses are reasonable, the rule eliminates the need for testimony on that often uncontested issue. *Id.* Finally, the fact that a statement was submitted is at least some evidence that the charge is normal for the treatment involved, and it was necessary to be performed. *Id.* at 277–78.

In this case, during direct examination of Michelle, the Teters' counsel asked Mi-

chelle to go through each of her medical bills for the jury. After she identified the first bill and stated the total amount charged, Burge's counsel requested a side bar. The trial court ordered the jury to leave for a recess, and the following discussion between the trial court and counsel for both parties transpired:

COURT: Now, we can do this the long way or we can do it the short and easy way. The [medical expenses] summary is clearly inadmissible. Now, [Teters' counsel] is going to go through each bill and I think there's a case that says that copies of the bills are proof—unless [there is a] question of the reasonable necessity of that bill....

\* \* \*

COURT: ... Now, all he has to do is go through all of them one at a time—page by page. And have your client identify them and if they were charged these things. And there was no insurance involved, so she's got all the bills, I'll assume.

[Teters' counsel]: Yes they [do].

COURT: And I don't care. I mean if he wants to—

[Burge's counsel]: That's not my point, your Honor. I mean—that's really not my point with my objection.

COURT: What was your point?

[Burge's counsel]: My objection is that that very well may be the bills that she got. But, I'm not really disputing those total amounts that she testified to. But just because you get billed that amount doesn't mean—my client has to pay for reasonable medically necessary bills. And just because they were billed that doesn't necessarily make it reasonable.

COURT: Who else you got coming up on medical? You had Dr. Green–Mack. She testified to something about future [medical expenses]. Did you ask her about the cost of what had been done to your client?

[Teters' counsel]: I didn't talk to her about the current bills because we had stipulated to the admissibility of the current bills. That was the first time it was ever raised about the [reasonableness] of the bills. I—what—actually—from the defendant—what bills are you talking about? Maybe we can—

[Burge's counsel]: Well, I know Dr. Mandel—

COURT: He's going to make you jump through every hoop there is on earth—because you have ticked him off.... So we can add an extra half-day or a day to this trial because of that. And, that's basically what it is.

[Burge's counsel]: *Judge, may I just resolve this issue?*

COURT: I would love to have something resolved....

\* \* \*

[Burge's counsel]: Well, *Dr. Mandel's bill includes a $200 fee for a letter to [Teters' counsel] and that's not reasonable.*

COURT: Those are not compensable....

\* \* \*

COURT: ... [A]ny medical reports are clearly not compensable. If they're in that [summary], they need to be removed.

[Burge's counsel]: It's $200.

\* \* \*

[Teters' counsel]: We'll take it out.

\* \* \*

COURT: *Are there others in there?*

[Burge's counsel]: *No.* I was just making [Teters' counsel] do his job.

\* \* \*

[Burge's counsel]: Usually, plaintiff's counsel will have a doctor look at the bills and say that they are reasonable and necessary and that didn't happen in this case.

\* \* \*

[Burge's counsel]: ... *[But] as long as we take the $200 out and reduce the amount of damages for $200 I will agree to let Exhibit 22 [medical expenses summary] in.*

(Emphases added). The Teters then submitted a summary of their medical expenses (Exhibit 22) in lieu of submitting each medical bill.

At the conclusion of the Teters' case, Burge moved for judgment on the evidence on the issue of the Teters' medical expenses. Burge stated that because the Teters had not offered any of the actual medical bills into evidence, they had not sustained their burden of proof on that issue. The Teters responded that Burge had agreed to accept the summary of medical expenses in lieu of going through each bill to save time. The trial court denied Burge's motion.

The transcript excerpt set out above shows that when Michelle Teter began to go through each of her medical bills, Burge's counsel interrupted her and requested a side bar. During the ensuing discussion, the trial court expressly asked Burge's counsel whether he wanted the Teters to go through the bills or whether the summary would be sufficient. Burge's counsel only objected to one of the charges on the summary on the basis that it was not compensable, and the Teters agreed to delete that charge from the summary. Burge's counsel then consented to the ad-

mission of the summary without further objection.

In the context of the entire discussion on this issue, it is clear that Burge conceded that the medical expenses were reasonable and necessary as shown in the summary. The trial court gave Burge the option of having the Teters go through each bill, and Burge declined. Thus, Burge's motion for judgment on the evidence on the issue of medical expenses was without merit. The trial court did not abuse its discretion when it denied that motion.

Affirmed.

KIRSCH, C.J., and RILEY, J., concur.