Eric P. SIBBING, Appellant–
Defendant,

v.

Amanda N. CAVE, Individually and as
the Mother and Guardian of Mercy M.
Cave, a Minor Child, Appellee–Plain-
tiff.

No. 49A02–0802–CV–165.

Court of Appeals of Indiana.

March 5, 2009.

William H. Kelley, Darla S. Brown, Kel-
ley, Belcher & Brown, Bloomington, IN,
Attorneys for Appellant.

James A. Mellowitz, Robert W. York &
Associates, Indianapolis, IN, Attorney for
Appellees.

## OPINION

MATHIAS, Judge.

Eric P. Sibbing ("Sibbing") appeals the
judgment of the Marion Superior Court in

favor of Amanda N. Cave ("Cave"), individually and as the mother and guardian of Mercy M. Cave ("Mercy"), in Cave's negligence action against Sibbing stemming from an automobile accident. On appeal, Sibbing presents two issues: (1) whether the trial court erred in allowing into evidence testimony from Cave regarding medical test results and the cause of her pain, and (2) whether the trial court erred in granting Cave's motion to strike portions of the testimony of Sibbing's expert medical witness.

We affirm.

**Facts and Procedural History**

On October 27, 2005 Cave was driving her Dodge pickup truck southbound on Kentucky Avenue in Indianapolis. Her daughter Mercy, then nine years old, was a passenger in the front seat. Sibbing was driving one to two car-lengths behind Cave in a Pontiac Sunbird. As the traffic ahead of her slowed down, Cave slowed her truck to approximately 10 to 15 miles per hour. Sibbing, who was travelling anywhere from 45 to 55 miles per hour, had been "playing" with his car radio and did not see the slowed traffic. Tr. p. 56. Sibbing's car crashed into the back of Cave's truck, knocking his eyeglasses off his face, breaking the latches under Cave's seat, and lifting Cave's truck slightly off the ground. Sibbing later described the severity of the crash as a "7 or 8" on a scale of 1 to 10. Tr. p. 213. Cave did not hear any squealing of tires before being hit, and the police officers responding to the scene found no skid marks on the road from Sibbing's car. Although Cave was able to drive her truck away from the accident, her truck was severely damaged by the crash. The camper shell on the truck bed was pushed forward onto the cab, damaging it; the tailgate of the truck was bent; the bumper was crushed; and the frame was damaged as well. An estimate to repair the truck amounted to $6,258, which exceeded the value of the truck. Sibbing's car was also "totaled" and had to be towed from the scene. Tr. p. 58.

Although the impact had caused Cave's elbows to hit the steering wheel and had jammed her foot under the dashboard, she told the responding police officers that she did not need an ambulance. Cave did complain of a headache, and returned home to lay down in bed. When she awoke three hours later, Cave had pain in her right side and went to the hospital, where she complained of pain in her ribs and in her right leg, knee, hip, and ankle. X-rays revealed no fractures. Although Sibbing now claims that Cave complained of no back pain at the hospital, Cave testified that at the hospital, "they ... had their hands on my hips, like at the top of the rear hips, and kind of went in with their fingers and when they touched in the center there I screamed and nearly came off the bed, it was, it hurt real, real bad right there in the center." Tr. pp. 68–69. Similarly, the hospital examination revealed that Cave showed "tenderness" in her "SI," which was explained at trial by Dr. Ronald Sheppard as being "sacroiliac joint or area of the back." Tr. p. 255–56. Over Sibbing's objection, Cave testified that hospital personnel told her that she would feel worse over the next week because injuries from car accidents are often not immediately apparent. The hospital sent Cave home with a prescription for a pain reliever and instructions to rest and to follow up with another doctor.

Over the next few weeks, Cave's condition worsened. Pain in her back and hips made it difficult for her to drive, which caused her to miss work at her courier

business and at her job as a delivery driver. Cave eventually sought treatment from internist Dr. Muhammad Saquib at Priority 1 Medical. Cave complained of severe pain in her foot and back, and of pain in her neck, elbow, knee, hip, and further complained of headaches and an inability to sleep. An examination revealed that Cave had an improper gait caused by her inability to stand normally without pain, muscle spasms in her back, and a limited range of motion.

On November 30, 2005, Cave underwent an MRI which revealed that she had a bulging disc at her L5–S1 vertebrae. The MRI report did not state that the bulge was causing any pressure on a nerve or on Cave's spinal cord, but the location of the bulge was in the same area where Cave had reported pain and tenderness after the accident. The MRI showed no sign of degeneration or disc disease. Cave's expert witness, Dr. Sheppard, testified that given Cave's age and history, the bulging disc indicated to him that the injury was the result of trauma. Cave also underwent a nerve conduction study which indicated that the nerves in her legs were not functioning properly. Cave received various treatments at Priority 1 Medical until December 14, 2005, when she felt she was no longer improving.

Cave then sought treatment at Castleton Chiropractic, where she was treated by Dr. Sheppard and his colleague Dr. Peachtree. Cave's main problem was still lower back pain, but she also continued to have pain in her neck, and right knee and ankle. Cave was treated at Castleton Chiropractic until June 19, 2006, but she still complained of pain. Dr. Sheppard referred Cave to a pain specialist, but Cave was unable to be treated, apparently because of her lack of medical insurance. Cave still suffers from chronic pain, and Dr. Sheppard determined that Cave had permanent partial impairment rating of ten percent of her whole person. Cave claimed that, as a result of the crash, she had incurred medical expenses of over $16,000.

On August 14, 2006, Cave filed a complaint against Sibbing, alleging that she was injured as a result of Sibbing's negligence. Sibbing initially denied liability and further claimed that Cave had failed to mitigate her damages. At some point prior to trial, however, Sibbing admitted fault for the crash, but still challenged Cave's claims of damages. Also prior to trial, Cave filed a motion to strike portions of the testimony of Sibbing's expert medical witness, Dr. Paul Kern, a physician who had performed his own examination of Cave. Specifically, Cave moved to strike Dr. Kern's testimony that, in his opinion, the nerve conduction studies performed on Cave at Priority 1 Medical were medically unnecessary and that the "passive" chiropractic care Cave received beyond one month following the accident was also medically unnecessary. The trial court granted Cave's motion.

On September 11 through 13, 2007, a jury trial was held on the issue of damages. Cave requested that the jury award her between $154,401 and $242,141 in damages. Sibbing argued that Cave should receive either no damages or at most $4,500. The jury returned a verdict in favor of Cave in the amount of $71,675 for her damages and $325 in damages for her daughter Mercy. On October 9, 2007, Sibbing filed a motion to correct error. On November 5, 2007, the trial court scheduled Sibbing's motion for a hearing to be held on January 11, 2008, but later rescheduled the hearing for February 1, 2008. On February 4, 2008, three days

after the hearing, the trial court denied Sibbing's motion to correct error. Sibbing then filed a notice of appeal on February 22, 2008.

### Discussion and Decision

■ On appeal, Sibbing attacks the trial court's decisions to admit certain testimony by Cave's witnesses and to exclude portions of the testimony of his expert medical witness. Our standard of review on such matters is well settled. We review decisions concerning the admissibility of evidence only for an abuse of discretion. *Armstrong v. Gordon,* 871 N.E.2d 287, 293 (Ind.Ct.App.2007), *trans. denied.* However, to the extent that the issue depends on the construction of a rule of evidence, and not the rule's application to any particular set of facts, our review is de novo. *Cook v. Whitsell–Sherman,* 796 N.E.2d 271, 277 (Ind.2003).

### A. Admission of Evidence

■ Sibbing claims that the trial court erroneously admitted hearsay evidence when it permitted Cave to testify regarding what Dr. Saquib told her about diagnostic tests and the cause of her pain.[1] Hearsay is defined by rule as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Ind. Evidence Rule 801(c). As a general rule, hearsay evidence is not admissible. Ind. Evidence Rule 802. However, there are several exceptions to this general rule. At issue here is the following exception contained in Evidence Rule 803(4):

> The following are not excluded by the hearsay rule, even though the declarant is available as a witness.
>
> \* \* \*
>
> (4) Statements for Purposes of Medical Diagnosis or Treatment. Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment.

The trial court apparently believed that Dr. Saquib's statements to Cave fell within this exception. Sibbing claims that this exception applies only to statements made *by* patients, not statements made *to* patients.

In response, Cave cites *Coffey v. Coffey,* 649 N.E.2d 1074, 1078 (Ind.Ct.App.1995), wherein a panel of this court held that the trial court erred in excluding a letter from the husband's physician which addressed the husband's physical diagnosis and treatment agenda and further opined that the husband was unable to work due to his physical condition. The court concluded that the letter should have been admitted pursuant to the hearsay exception contained in Rule 803(4). *Id.* Cave thus

---

1. In addition to his challenge to Cave's testimony regarding what her physician told her, Sibbing also appears to challenge Cave's testimony that she was told by emergency room personnel that the extent of her injuries might not be immediately apparent and that she would feel worse over the week following the accident. This testimony, however, was cumulative of the testimony of Dr. Sheppard and Dr. Kern, both of whom testified that injuries sustained in accidents are often not immediately apparent. Reversible error cannot be predicated upon a trial court's erroneous admission of evidence that is merely cumulative of other evidence that has already been properly admitted. *Davis v. Garrett,* 887 N.E.2d 942, 947 (Ind.Ct.App.2008), *trans. denied.*

claims that Rule 803(4) properly applied to her testimony regarding what her physician told her. Sibbing claims that *Coffey* is distinguishable from the present case because, in *Coffey,* only the physician's letter was deemed admissible, not testimony from the husband regarding what his physician had said. To us, this is a distinction without difference. The physician's out-of-court statements would be hearsay regardless of whether they were admitted through the letter or by the testimony of a witness. Based upon *Coffey,* it would appear that the trial court did not err in admitting Cave's testimony.

However, even if we were to agree with Sibbing's interpretation of Rule 803(4), he must still establish that the trial court's evidentiary decisions constituted reversible error. From what we can gather,[2] the testimony Sibbing now claims was improperly admitted consists of Cave's statements that Dr. Saquib, or the results of the tests performed by Dr. Saquib, informed her that: (1) an MRI revealed a "bulging" disc at her L5–S1 vertebrae, (2) she had no degenerative conditions, (3) her pain was caused by her "bulging" disc, (4) her strength and range of motion was less on her right side than her left side, and (5) her spine was "off" because of "whiplash." *See* Appellant's Br. pp. 5–10 (quoting Tr. pp. 80–83, 89–90).

Most of this information was presented to the jury through other exhibits or witnesses, particularly Cave's expert medical witness, Dr. Sheppard. With regard to Cave's testimony regarding her "bulging" disc, the MRI report, which was admitted without objection, states, "There is an annular disk bulging at L5–S1." Appellee's App. p. 310. Dr. Sheppard also testified without objection that the MRI revealed that Cave had a bulging disc at L5–S1. Tr. pp. 266–70. Similarly, Cave's testimony that she had no degenerative disease was repeated by Dr. Sheppard, who testified without objection that the MRI tests showed that Cave had no degeneration problems with her back. Tr. pp. 270–71. Likewise, Dr. Sheppard testified that a bulging disc was consistent with Cave's complaints of back pain, and that the bulging disc "causes the low back pain[.]" Tr. p. 267–68.

Dr. Sheppard also testified that, as a result of Cave's injuries she would be prone to a "reduced range of motion." Tr. p. 274. Also, Dr. Sheppard testified that the records from Priority 1 Medical, which were also admitted without objection, showed that Cave had a decreased range of motion. Appellee's App. p. 308. Other test results from Priority 1 Medical indicated that Cave's range of motion was reduced more on the right side than the left. Appellee's App. p. 265.

Lastly, although Dr. Sheppard did not testify that Cave's injuries were the result of "whiplash," he did testify that Cave's

---

**2.** It has been difficult for us to tell precisely which portions of Cave's testimony that Sibbing now claims were improperly admitted. The argument section of his brief refers generally to Cave's testimony regarding what Dr. Saquib told the diagnostic tests he performed and the cause of her pain, but it does not refer to any specific page of the transcript where the allegedly-improper testimony was admitted. In his statement of facts, Sibbing quotes large blocks of the transcript containing the portions of Cave's testimony to which he now objects. Although we decline Cave's invitation to conclude that Sibbing has waived his argument in its entirety, we limit our discussion to those portions of Cave's testimony which Sibbing quotes in his brief.

injuries were the result of "trauma."[3] Tr. p. 271. The only evidence of any trauma experienced by Cave was the accident caused by Sibbing. He also testified that x-rays showed a straightening of the curvature of Cave's neck as a result of muscle spasms. Tr. p. 263–64.

■ Therefore, Cave's alleged hearsay testimony which Sibbing now claims was improperly admitted was cumulative of other evidence admitted without objection. Sibbing goes to some length to argue that, even if this evidence is cumulative, its admission was not harmless error. It is well established, however, that any error caused by the admission of evidence is harmless if it is cumulative of other evidence appropriately admitted. *Linton v. Davis,* 887 N.E.2d 960, 977 (Ind.Ct.App. 2008). Therefore, reversible error cannot be predicated upon a trial court's erroneous admission of evidence that is merely cumulative of other evidence that has already been properly admitted. *Davis v. Garrett,* 887 N.E.2d 942, 947 (Ind.Ct.App. 2008), *trans. denied.* Even if the trial court should have excluded the relevant portions of Cave's testimony, any error was harmless. *See id.* (any error in admission of police report was harmless where information contained therein was cumulative of witness's testimony).

## B. Exclusion of Evidence

■ Sibbing also claims that the trial court erred in granting Cave's motion to strike portions of the videotaped testimony of his expert medical witness, Dr. Kern. Specifically, Sibbing claims that the trial court erred in striking those portions of Dr. Kern's testimony in which he stated that, in his opinion, some of the treatment Cave had received from her medical care providers was unnecessary. Specifically, Dr. Kern testified that he did not "believe in" the treatment Cave received and did not think the nerve conduction test performed on Cave was a valuable diagnostic tool. Appellant's App. p. 78. Sibbing notes that, in Indiana, the party seeking to recover medical expenses must prove that the expenses were both reasonable and necessary. *See Cook,* 796 N.E.2d at 277. Cave claims that this testimony was impermissible, citing *Whitaker v. Kruse,* 495 N.E.2d 223 (Ind.Ct.App.1986).

In *Whitaker,* the defendants admitted their negligence but sought to reduce their liability by arguing that the plaintiff's injuries were aggravated by unnecessary and negligent medical treatment. The trial court in that case instructed the jury that the defendant was not responsible for the aggravation of the plaintiff's injuries caused by unnecessary or negligent medical treatment. Upon appeal, the court held that the jury instruction was erroneous, quoting the Restatement (Second) of Torts § 457 (1965):

> If the negligent actor is liable for another's bodily injury, he is also subject to liability for any additional bodily harm resulting from normal efforts of third persons in rendering aid which the other's injury reasonably requires, irrespective of whether such acts are done in a proper or a negligent manner.

*Id.* at 225; *see also Suelzer v. Carpenter,* 183 Ind. 23, 32, 107 N.E. 467, 470–71

---

3. Sibbing did object to Dr. Sheppard's testimony that Cave's disc problems were caused by trauma and not degenerative conditions. However, he based his objection on Dr. Sheppard's qualifications. More importantly, Sibbing does not now claim on appeal that the trial court erred in overruling his objection.

(1915) (holding that, if plaintiff uses ordinary care in selecting surgeon, the surgeon's aggravation of the plaintiff's injuries by unskillful treatment will not alone preclude recovery by the plaintiff of damages for the aggravated as well as the original injury). The *Whitaker* court held that recovery is permitted whether the aggravated injuries are caused by a misdiagnosis of the injury and a subsequent unnecessary operation or by a proper diagnosis and a negligently performed necessary operation. *Id.* at 226 (citing Restatement (Second) of Torts § 457, comment a, illustration 1).

The court noted that Indiana follows the general rule that a plaintiff's recovery may be reduced if he fails to obey his physician's instructions and thereby exacerbates or aggravates his injury. *Id.* Thus, if the court had adopted the opposite position, then "the injured party would be placed in the unenviable position of second-guessing his physicians in order to determine whether the doctor properly diagnosed the injury and chose the correct treatment." *Id.* The court refused to "place innocent parties who have been injured by another's negligence in such a position." *Id.*

> Not only would the injured party be forced to second-guess his physician, he would be caught in a vice which offers no correct choice of action. On the one hand, his damages could be reduced if he submitted to the physician's treatment and it was later argued that the physician chose a course of action that was inappropriate and unnecessary. On the other hand, if the patient refused to follow the physician's advice, the tortfeasor could argue that the injured party's damages should be reduced because he failed to follow his physician's instructions. Thus, the injured party is placed in a no win situation.

*Id.* The court ultimately held that an injured party may recover for injuries caused by the original tort-feasor's negligent conduct and for any aggravation of those injuries caused by a physician's improper diagnosis and unnecessary treatment or proper diagnosis and negligent treatment. In order to recover under this rule, the plaintiff need only show he exercised reasonable care in choosing the physician. *Id.*

Sibbing argues that the *Whitaker* case does not control because he is not arguing that Cave's medical care providers aggravated her injuries. He simply claims that the treatments they chose were unnecessary. We see little difference between this case and *Whitaker*. The justifications for the rule in *Whitaker* apply equally whether the unnecessary treatment aggravates the plaintiffs injuries or is simply ineffective. Either way, a plaintiff should not be put in the position of second-guessing the treatment chosen by her medical care provider.

In *Edwards v. Sisler*, 691 N.E.2d 1252, 1254 (Ind.Ct.App.1998), the court, in holding that the rule from *Whitaker* was not altered by Indiana's Comparative Fault Act, noted that "other jurisdictions have treated the question similarly." *Id.* (citing *Ponder v. Cartmell*, 301 Ark. 409, 784 S.W.2d 758, 760–61 (1990)) (citing *Whitaker* in holding that plaintiff may recover for unnecessary procedures in an attempt to cure original injury); *see also Hanson v. Am. Fam. Mut. Ins. Co.*, 294 Wis.2d 149, 716 N.W.2d 866, 871–72 (2006) (holding that motorist injured in automobile accident was entitled to medical expenses regardless of whether her physician performed unnecessary surgery where the motorist used ordinary care in selecting physician and surgery arose from the inju-

ry caused by the accident); *Spangler v. Wal–Mart Stores, Inc.,* 673 So.2d 676, 679 (La.Ct.App.1996) (noting that tort-feasor is liable for unnecessary treatment or over-treatment unless the tort-feasor can show that the plaintiff underwent the treatment in bad faith).

Sibbing claims that if he is not permitted to challenge the necessity of Cave's medical treatment, it would be impossible for him to challenge the reasonableness and necessity of her medical expenses, which Cave bore the burden of proving. *See Cook,* 796 N.E.2d at 277. We first observe that Dr. Kern did not testify that Cave's treatment was unnecessary because she was uninjured or because the treatment addressed symptoms unrelated to the automobile accident. Certainly Sibbing should have been permitted to present evidence that Cave's physicians were treating her for a condition unrelated to the accident—a condition for which Sibbing's negligence would not be the proximate cause. But this is not what the stricken portions of Dr. Kern's testimony stated. Instead, in the stricken portions at issue, Dr. Kern stated that, in his opinion, the treatment chosen by her medical care providers was ineffective and that he did not "believe in" the treatment.[4]

Furthermore, Dr. Kern did not state that he thought the charges for Cave's treatments were excessive. There is a notable difference between challenging the plaintiff's medical expenses and challenging the specific course of treatment chosen by the plaintiff's medical care providers. Our holding means that Sibbing could not challenge the specific course of treatment chosen by Cave's doctors, but it does not mean that he could not challenge the expenses that were incurred as a result of these treatments as excessive.

Here, Sibbing's negligence caused Cave's injuries. Moreover, there is no suggestion that Cave was negligent in her choice of medical care providers. Therefore, Sibbing should not be able to challenge the particular course of treatment chosen by Cave's medical care providers to treat the injuries resulting from his negligence. To do so would force the innocently injured plaintiff to second-guess the choice of treatment chosen by her medical care providers. Therefore, we cannot say that the trial court abused its discretion in excluding the portions of Dr. Kern's videotaped testimony.

### Conclusion

The trial court did not err in permitting Cave to testify as to what her physician

---

4. The dissent indicates that Dr. Kern "did *not* state that he did not believe in the treatment in question[.]" Op. at 1163 (emphasis added). Although Dr. Kern might not have said that he did not believe in chiropractic care in general, when asked by Cave's counsel on cross-examination whether Cave should be able to rely on her medical care providers for "direction and advice on how to treat her pain," Dr. Kern said, "No. She certainly ... she certainly has the right to do that." Defendant's Ex. A, p. 109. Cave's counsel then asked, "You just don't agree with their ... with the medical judgment?" *Id.* Dr. Kern replied, "*I don't believe in the treatment,* cor-

rect." *Id.* (emphasis added). The relevant question in the present case is not whether Dr. Kern generally "believed in" the type of treatment Cave received; the question is whether Dr. Kern should have been allowed to testify that he did not "believe in" the treatment Cave received from her medical care providers. Further, if Dr. Kern had no quarrel with the "passive" treatment Cave received in the first four weeks following the crash, then the "passive" treatment Cave received during that time is not in question. What was in question was care Cave received after the first four weeks, and it is clear that, in his opinion, Dr. Kern thought such treatment to be ineffective and unnecessary.

told her about diagnostic tests and the cause of her pain. Even if this testimony did not fall within the hearsay exception contained in Evidence Rule 803(4), its admission is harmless because it was cumulative of other evidence, the admissibility of which is unchallenged on appeal. Further, Sibbing may not seek to reduce his liability by challenging the specific course of treatment chosen by Cave's medical care providers to treat the injuries caused by Sibbing's negligence. Therefore, the trial court did not err in striking those portions of Dr. Kern's testimony in which he opined that certain treatments chosen by Cave's medical care providers was unnecessary.

Affirmed.

BROWN, J., concurs.

BAKER, C.J., concurs in result in part and dissents in part with opinion.

BAKER, Chief Judge, concurring in result in part and dissenting in part.

I agree with the majority's conclusion that the trial court properly allowed Cave to testify as to what Dr. Saquib told her about the diagnostic tests and the cause of her pain. However, I part ways with the determination that the trial court did not abuse its discretion in granting Cave's motion to strike Dr. Kern's videotaped testimony regarding the reasonableness and necessity of the passive treatment and nerve conduction study that Dr. Saquib ordered.

To recover damages for medical expenses, the plaintiff must prove that the expenses were both reasonable and necessary. *Burge v. Teter*, 808 N.E.2d 124, 132 (Ind.Ct.App.2004). This burden has been traditionally met through the admission of expert testimony. *Id.* As set forth in Indiana Evidence Rule 413:

Statements of charges for medical, hospital or other health care expenses for diagnosis or treatment occasioned by an injury are admissible into evidence. Such statements shall constitute prima facie evidence that the charges are reasonable.

In essence, the above rule provides a simpler method of proving the medical expenses when there is no substantial issue that they are reasonable and caused by the tort. *Burge*, 808 N.E.2d at 132. However, this court has also determined that if there is a dispute, the party opposing the medical expenses may offer evidence to the contrary, including expert opinion. *Id.*

In this case, Dr. Kern testified during his deposition that the passive care Cave received—including traction, manipulation, and heat and ice therapy—was not reasonable or medically necessary beyond four weeks after the accident because Cave's MRI scans of the low neck and back were normal. Appellant's App. p. 68–69, 73–74, 76. Additionally, Dr. Kern did not state that he did not believe in the treatment in question or that the treatments themselves were inappropriate or ineffective, and he did not criticize chiropractic care in general. In fact, Dr. Kern made it clear that passive care is not inappropriate in and of itself, opining that after four to six weeks after the injury, such care would be redundant. *Id.* at 81–82. Dr. Kern testified that there was no documentation in the records that nerve conduction studies were indicated because Cave had no weakness, loss of reflex, or severe sensation changes and because nerve conduction tests are not valuable for diagnosing. Appellant's App. p. 67–68. Indeed, Dr. Kern was rendering his opinion, based upon his review of Cave's records and his own experience practicing medicine, that passive treatment given more than a month after an accident was not helpful.

It is apparent that Sibbing—through Dr. Kern's expert testimony—was seeking an opportunity to lay a foundation for his argument that some of Cave's treatment was not reasonable or necessary. In other words, the evidence sought to challenge the particular course of treatment chosen by Cave's medical care providers to treat the injuries that resulted from Sibbing's negligence. Thus, contrary to the majority's view, I do not believe that this court's holding in *Whitaker v. Kruse*, 495 N.E.2d 223 (Ind.Ct.App.1986), precludes a defendant from calling an expert witness to render an opinion as to whether all of a plaintiff's treatment was reasonable or necessary under the circumstances.

Finally, I would note that because the trial court granted Cave's motion to strike Dr. Kern's testimony, Sibbing was effectively precluded from challenging the reasonableness and necessity of some of Cave's treatment. Moreover, because Sibbing is not arguing that Cave's medical care providers in any way aggravated her injuries, I cannot agree with the majority's proposition that the admission of Dr. Kern's testimony would place Cave " 'in the unenviable position of second-guessing his physicians in order to determine whether the doctor properly diagnosed the injury and chose the correct treatment.' " Op. at 1161 (quoting *Whitaker*, 495 N.E.2d at 226).

In short, I do not believe that Evidence Rule 413 precluded the admission of Dr. Kern's opinion testimony that Cave's physical findings did not warrant the passive treatment and nerve conduction study that Dr. Saquib had ordered. For these reasons, I believe that the trial court erred in granting Cave's motion to strike.