

FILED

Nov 14 2023, 8:32 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Timothy S. Schafer
Timothy S. Schafer, II
Todd S. Schafer
Schafer & Schafer, LLP
Merrillville, Indiana

ATTORNEYS FOR APPELLEE

Michael E. Tolbert
Shelice R. Tolbert
Candace C. Williams
Tolbert & Tolbert
Gary, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Daniel Shirley,<br>*Appellant-Plaintiff,*<br><br>v.<br><br>Daniel R. Shaver,<br>*Appellee-Defendant.* | November 14, 2023<br><br>Court of Appeals Case No.<br>23A-CT-204<br><br>Appeal from the Porter Superior Court<br><br>The Honorable Michael A. Fish, Judge<br><br>Trial Court Cause No.<br>64D01-1703-CT-3080 |

**Opinion by Judge Tavitas**
Judges Pyle and Foley concur.

**Tavitas, Judge.**

## Case Summary

[1] Daniel Shirley sued Daniel Shaver for negligence arising out of a collision in

which Shaver rear ended Shirley's vehicle. The jury found in favor of Shirley;

however, it determined that Shirley was partially at fault. Shirley appeals and argues: (1) the trial court abused its discretion by refusing one of Shirley's proposed instructions and instructing the jury on a motorist-safety statute; and (2) the jury's verdict is inadequate. We find these arguments without merit and, accordingly, affirm.

## Issues

Shirley raises two issues, which we reorder and restate as:

I. Whether the trial court abused its discretion in instructing the jury.

II. Whether the jury's verdict is inadequate.

## Facts

In 2013, Shirley was "T-boned" in a car accident. Tr. Vol. II p. 212. The vehicle that struck Shirley was traveling at approximately fifty miles per hour. After the accident, an ambulance transported Shirley to the hospital. Shirley experienced back, neck, and shoulder pain; limited range of motion in his back; a bruised kidney; and blood in his urine. After a short time, however, Shirley's back pain disappeared, and his life went "back to normal." *Id*. at 169.

This case concerns a different car accident that occurred on March 26, 2016. Shirley was driving along a single-lane highway in Valparaiso, Indiana. As the vehicle in front of Shirley slowed down to turn left, Shirley stopped his vehicle.

[5] Meanwhile, Shaver, driving behind Shirley, was "daydreaming and looking to the left" and rear-ended Shirley at approximately fifty miles per hour. *Id*. at 146. According to Shaver, Shirley "slammed on his brakes" too late for Shaver to come to a stop. *Id*. at 154.

[6] Shirley experienced soreness in his lower back after the accident; however, he did not seek medical treatment until approximately two months later when he went to the emergency room and complained of right lumbar back pain. Shirley explained to the treating physician that the pain started after the 2016 car accident and that the pain initially "went away" but returned while Shirley was playing basketball with his son. Ex. Vol. IV p. 66. Shirley's primary care physician ordered an MRI, which revealed a herniated disc in Shirley's lower back.

[7] Shirley was referred to the Lakeshore Bone and Joint Institute, and he began participating in therapy and receiving epidural steroid injections from pain specialist Dr. Heather Nath. Shirley's pain improved but did not disappear, and his condition worsened over time. In particular, the disc continued to degenerate, and Shirley experienced pain in both the right and left lumbar regions of his back. Both Dr. Nath and the defense's medical expert, orthopedic specialist Dr. Gary Klaud Miller, opined that Shirley's condition is permanent.

[8]     Shirley sued Shaver for negligence arising out of the 2016 car accident, and a jury trial was held in April 2019. That trial, however, resulted in a mistrial, and a second jury trial was held in November 2022.

[9]     At trial, Shirley denied slamming his brakes. Shirley also explained that he did not immediately seek medical treatment after the 2016 accident because he assumed that his pain would go away as it had after the 2013 accident.

[10]    According to Shirley, he experiences daily pain that fluctuates from "minimal" to "a lot worse tha[n] minimal." Tr. Vol. II p. 180. He admitted, however, that he described his pain as "nominal" during the first jury trial. *Id*. at 230. Shirley's employment has not changed, and he continues to engage in many of the same activities that he did before the 2016 accident, including camping and attending sporting events. Shirley experiences discomfort during these activities and must make adjustments, including using a standing desk and occasionally wearing a back brace.

[11]    The jury viewed video depositions of Drs. Nath and Miller. Dr. Nath attributed Shirley's injury to the 2016 accident. Dr. Miller, however, opined that Shirley had a preexisting degenerative disc condition and that the 2013 car accident also contributed to Shirley's injury. Dr. Miller noted that no MRI showed the status of Shirley's back prior to the 2016 accident.

[12]    During closing arguments, Shirley's counsel asked the jury to award $5 million based on Shirley's pain and suffering and potential, future medical expenses, which included the possibility of surgery. Defense counsel argued that Shaver

was not wholly responsible for Shirley's injuries and urged the jury to award no more than Shirley's current medical expenses, which totaled $15,623.61 at the time. On rebuttal, Shirley's counsel stated that "this case isn't really about medical bills." Tr. Vol. III p. 115.

[13] The jury found in Shirley's favor; however, it found Shirley twenty-percent at fault and Shaver eighty-percent at fault. The jury determined that Shirley's damages totaled $8,300, which it reduced to $6,640 based on Shirley's share of the fault.[1] Shirley now appeals.

## Discussion and Decision

### I. Abuse of Discretion—Jury Instructions

[14] We first address Shirley's argument that the trial court abused its discretion in instructing the jury. We afford our trial courts "'considerable discretion'" when engaging in this crucial role. *Ind. State Police v. Estate of Damore*, 194 N.E.3d 1147, 1165 (Ind. Ct. App. 2022) (quoting *Humphrey v. Tuck*, 151 N.E.3d 1203, 1207 (Ind. 2020)), *trans. denied*. When a party challenges the trial court's decision to give or refuse a jury instruction, we consider the following:

> (1) whether the instruction correctly states the law; (2) whether there is evidence in the record to support the giving of the instruction; and (3) whether the substance of the tendered instruction is covered by other instructions which are given.

---

[1] Shirley filed a motion to correct error, which the trial court denied.

> Reversal arises only if the appellant demonstrates that the instruction error prejudices his substantial rights.

*Hernandez v. State*, 45 N.E.3d 373, 376 (Ind. 2015) (internal citations and quotation marks omitted). The first consideration is a legal question, which we review de novo, whereas the other two are reviewed for an abuse of discretion. *Humphrey*, 151 N.E.3d at 1207.

### A. Apportionment Instruction

[15] In Final Instruction No. 20, the trial court instructed the jury as follows:

> A person's conduct is legally responsible for causing an injury if:
>
>> (1) the injury would not have occurred without the conduct, and
>>
>> (2) the injury was a natural, probable, and foreseeable result of the conduct.
>
> This is called a "responsible cause."
>
> There can be more than one responsible cause for an injury.

Appellant's App. Vol. II p. 133. The instruction closely follows Indiana Model Civil Jury Instruction 301.

[16] Additionally, the trial court provided a comparative fault instruction, which instructed the jury to "apportion the fault" between the parties and that the apportionment must "total 100 percent." *Id*. at 146. The trial court also instructed the jury that it could not hold Shaver liable to the extent that

Shirley's damages were caused solely by a preexisting condition or the 2013 accident.

[17] Shirley argues that, instead of delivering Final Instruction No. 20, the trial court should have instructed the jury based on his proposed instruction, which contained the same language as the trial court's instruction but added the following additional language:

> Where a logical basis can be found for some rough practical apportionment between responsible causes, it may be made. However, where no such basis can be found and the division is purely arbitrary, there is no practical course except to hold the defendant liable for the entire injury, notwithstanding the fact that other causes have contributed to it.

Appellant's App. Vol. II p. 171. Shirley drew this language, with some changes, from *Dunn v. Cadiente*, 516 N.E.2d 52, 56 (Ind. 1987). At trial, Shirley argued that his proposed instruction should be given to provide the jury with an "idea of how to handle the situation when there is more than one responsible . . . cause." Tr. Vol. III p. 17. The trial court refused the instruction. On appeal, Shirley argues that, without this language, the jury was not instructed on "how to handle the situation where [the jury] can't determine what is pre-existing and what is aggravated or caused by the crash[.]" Appellant's Br. p. 27.

[18] In *Dunn*, the patient sued his physician for medical malpractice, and he appealed the judgment of $24,065 as inadequate. 516 N.E.2d at 53. In discussing the patient's preexisting condition, our Supreme Court stated the following:

To the extent that there may have been conflicting evidence regarding the extent to which all of [the patient's] injuries and losses were causally related to [the physician's] conduct or the congenital anomaly, the question may be viewed as one of apportionment of damages. Upon this issue, Prosser favors the following approach:

Where a logical basis can be found for some rough practical apportionment, which limits a defendant's liability to that part of the harm which he has in fact caused, it may be expected that the division will be made. **Where no such basis can be found and any division must be purely arbitrary, there is no practical course except to hold the defendant for the entire loss, notwithstanding the fact that other causes have contributed to it.**

Prosser, [Law of Torts, 4th Edition], p. 314. . . . Viewing the evidence favorable to the judgment, we find it does not inescapably lead to the conclusion that apportionment is impossible. Thus the trial court did not err in failing to award damages for all of the injuries and losses claimed by [the patient].

*Id*. at 56 (emphasis added).

[19] We find *Dunn* distinguishable, and we conclude that the trial court properly refused the proposed instruction. The proposed instruction does not correctly state the law because it contradicts Indiana's Comparative Fault Act.

[20] The Comparative Fault Act provides, in relevant part:

(b) The court, unless all the parties agree otherwise, **shall** instruct the jury to determine its verdict in the following manner:

> (1) **The jury shall determine the percentage of fault of the claimant, of the defendant, and of any person who is a nonparty.** . . . In assessing percentage of fault, the jury shall consider the fault of all persons who caused or contributed to cause the alleged injury, death, or damage to property, tangible or intangible . . . .
>
> * * * * *

Ind. Code § 34-51-2-7(b) (emphasis added); *see also Sedam v. 2JR Pizza Enterprises, LLC*, 84 N.E.3d 1174, 1178-79 (Ind. 2017) ("The Comparative Fault Act provides that the jury **must** apportion fault to those 'who caused or contributed to cause the alleged injury[.]'") (quoting Ind. Code § 34-51-2-8(b)(1)) (emphasis added). The term "fault" "includes unreasonable assumption of risk not constituting an enforceable express consent, incurred risk, and unreasonable failure to avoid an injury or to mitigate damages." Ind. Code § 34-6-2-45(b).

[21] Here, the jury's role was to determine the extent to which Shirley suffered harm that was not due solely to a preexisting condition or the 2013 accident. The jury was then permitted to consider whether Shirley was at fault for his sudden stop before the 2016 accident and for failing to timely seek medical treatment. If the jury found Shirley partially at fault for his injuries, the plain language of the Comparative Fault Act required the jury to then apportion fault between Shirley and Shaver accordingly. The proposed instruction, however, would permit the jury to refrain from apportioning fault and to instead hold Shaver responsible for the entirety of Shirley's damages. *See Hainey v. Zink*, 394 N.E.2d

238, 242 (Ind. Ct. App. 1979) ("[T]he trial court may not, by contradictory instructions, leave the jury with the task of determining which of the two instructions to follow or what rule of law to apply." (citing *Deckard v. Adams*, 203 N.E.2d 303, 306 (Ind. 1965); *Childs v. Rayburn*, 346 N.E.2d 655, 663 (Ind. Ct. App. 1976))).

[22] It is true that the proposed instruction is drawn, with minor modifications, from *Dunn*. Indiana courts, however, have long held that "'certain language or expression' used by an appellate court 'to reach its final conclusion' is 'not [necessarily] proper language for instructions to a jury.'" *Batchelor v. State*, 119 N.E.3d 550, 563 (Ind. 2019) (quoting *Ludy v. State*, 784 N.E.2d 459, 462 (Ind. 2003)) (brackets in original). That is the case here.

[23] A close review of *Dunn* confirms the impropriety of using its apportionment language as a jury instruction in comparative fault cases. To begin, the language appears to be dicta. The Indiana Supreme Court ultimately held in *Dunn* that apportionment was not impossible and that the trial court properly declined to hold the physician liable for the full extent of the patient's injuries. 516 N.E.2d at 56. The situation where an apportionment could not be made, thus, was not before the Court. *See Sw. Allen Cnty. Fire Prot. Dist. v. City of Fort Wayne*, 142 N.E.3d 946, 956 (Ind. Ct. App. 2020) (statements that are not necessary in the determination of the issues presented are dicta and are not binding), *trans. denied*.

Additionally, a review of Professor William L. Prosser's discussion of apportionment—upon which *Dunn* relied—further confirms our doubts about a *Dunn*-based apportionment instruction in comparative fault cases. Professor Prosser envisioned, as scenarios where apportionment would be impossible, when two defendants, "struggling for a single gun, succeed in shooting the plaintiff" or two defendants pollute a stream with oil that ignites and "burns the plaintiff's barn." Prosser, Law of Torts, 4th Edition, p. 314. The Comparative Fault Act, however, "abrogates the old rule of joint and several liability in suits to which the Act applies." *Ind. Dep't of Ins. v. Everhart*, 960 N.E.2d 129, 138 (Ind. 2012).

Most significantly, *Dunn* was a medical malpractice case to which the Comparative Fault Act does not apply. *See Cavens v. Zaberdac*, 849 N.E.2d 526, 530 (Ind. 2006) (citing Ind. Code § 34-51-2-1). Whatever the validity of a *Dunn*-based apportionment instruction, it does not correctly state the law in a case such as this where the Comparative Fault Act applies. Accordingly, the trial court did not abuse its discretion by refusing the proposed instruction.[2]

## B. Instruction on Indiana Code Section 9-21-8-24

In Final Instruction No. 18, the trial court instructed the jury as follows:

---

[2] In explaining why it refused the proposed instruction, the trial court noted that it was not part of the pattern instruction. Though we conclude that the trial court did not abuse its discretion by refusing the instruction, the mere fact that a proposed instruction does not follow a pattern instruction is not a proper basis to refuse it. *See Ramirez v. State*, 174 N.E.3d 181, 199 (Ind. 2021) ("[W]hile it is 'preferred practice' to use pattern jury instructions, we do not require it.").

When the events in this case happened, Indiana Code § 9-21-8-24 provided, in part, as follows: "A person may not:

> (1) slow down or stop a vehicle;
>
> (2) turn a vehicle from a direct course upon a highway; or
>
> (3) change from one (1) traffic lane to another; unless the movement can be made with reasonable safety."

If you decide from the greater weight of the evidence that a person violated Indiana Code § 9-21-8-24, and that the violation was not excused, then you must decide that person was negligent.

Appellant's App. Vol. II p. 131.

[27] At the time the events took place, the full text of Indiana Code Section 9-21-8-24 provided:

> A person may not:
>
> > (1) slow down or stop a vehicle;
> >
> > (2) turn a vehicle from a direct course upon a highway; or
> >
> > (3) change from one (1) traffic lane to another;
>
> unless the movement can be made with reasonable safety. **Before making a movement described in this section, a person shall give a clearly audible signal by sounding the horn if any pedestrian may be affected by the movement and give an appropriate stop or turn signal in the manner provided**

> **in sections 27 through 28 of this chapter if any other vehicle may be affected by the movement.**

Indiana Code Section 9-21-8-24 (1991) (emphasis added).[3]

[28] At trial, Shirley objected to the instruction and argued that "[t]he purpose of [Indiana Code § 9-21-8-24] is signaling," which he contended was not at issue in the case. Tr. Vol. III p. 25. Shirley argued, as he does on appeal, that the instruction was irrelevant and, because it omitted the second half of Indiana Code Section 9-21-8-24, it was also misleading.

[29] The trial court overruled Shirley's objection to the instruction. The trial court stated that Indiana Code Section 9-21-8-24 required safe movement of a vehicle "generally speaking" and was not merely a signaling statute. Tr. Vol. III p. 31. The trial court then explained that, based on the evidence that Shirley came to a "sudden stop," the statute applied and the instruction thereon was proper. *Id.*

[30] We conclude that the trial court was within its discretion to deliver the instruction as it did. First, Indiana Code Section 9-21-8-24 was clearly relevant. Shaver presented evidence that Shirley came to a sudden stop, which is relevant to the statute's requirement that no person "slow down or stop a vehicle" unless the movement can be made with reasonable safety. Ind. Code § 9-21-8-24(1).

---

[3] The statute has since been amended, although the pertinent language remains the same.

Though Shirley denied coming to a sudden stop, that evidentiary conflict was for the jury to decide.

[31]     Shirley argues that the statute is merely a "signaling instruction" and "has no application to a driver that has the right of way." Appellant's Br. pp. 28-29. He relies on *Burge v. Teter*, 808 N.E.2d 124 (Ind. Ct. App. 2004), which we find distinguishable. In that case, the Teters were turning from the left lane as the left-lane traffic light was green. *Id*. at 127. While the Teters were in the intersection, the light changed to yellow, and Burge, who was travelling in the opposite direction, struck the Teters' vehicle. *Id*. The Teters sued, and the jury found in their favor.

[32]     On appeal, Burge argued that the trial court abused its discretion by refusing his proposed instruction on Indiana Code Section 9-21-8-24. A panel of this Court disagreed and held that "the language of Indiana Code Section 9-21-8-24 indicates that it does not apply to a driver who has the right-of-way pursuant to a traffic signal." *Id*. at 131.

[33]     Nothing in *Burge* suggests that Indiana Code Section 9-21-8-24 is merely a signaling statute. The Court's use of the words "traffic signal" in that case referred to the traffic light, not the turn signals or horn of a vehicle. Moreover, whether Shirley had the right of way is irrelevant here—the issue is whether Shirley's alleged sudden stop contributed to the rear-end collision.

[34]     Additionally, because signaling was irrelevant to this case, we fail to see how the trial court's omission of the second half of Indiana Code Section 9-21-8-24

prejudiced Shirley. The trial court was within its discretion to tailor the instruction to "conform to the facts of the case." *See Burdick v. Romano*, 148 N.E.3d 335, 344 (Ind. Ct. App. 2020) (holding that trial court did not abuse its discretion by omitting certain language from statute in jury instruction when only a portion of the statute was relevant to plaintiff's complaint), *trans. denied*. Accordingly, we cannot say that the trial court abused its discretion either by failing to instruct the jury on the proposed instruction or by instructing the jury on only the relevant portion of Indiana Code Section 9-21-8-24.

## II. Inadequate Damages Award

Lastly, Shirley argues that the jury's damages award was inadequate and that we must remand for a new trial. We are not persuaded.

"[J]uries are afforded a great deal of discretion in assessing damage awards." *Best Formed Plastics, LLC v. Shoun*, 51 N.E.3d 345, 353 (Ind. Ct. App. 2016) (citing *Ritter v. Stanton*, 745 N.E.2d 828, 843 (Ind. Ct. App. 2001), *trans. denied*), *trans. denied*. As this Court has explained:

> [W]hen reviewing a claim that an award of damages is inadequate, we will neither reweigh evidence, nor judge the credibility of the witnesses. We consider only the evidence favorable to the award. Additionally, we must not reverse a damage award so long as the damages fall within the scope of the evidence. The finder of fact is in the best position to assess damages.

*DeGood Dimensional Concepts, Inc. v. Wilder*, 135 N.E.3d 625, 634 (Ind. Ct. App. 2019) (internal citations omitted), *trans. denied*; *accord Renner v. Shepard-Bazant*,

172 N.E.3d 1208, 1212 (Ind. 2021). A new trial, however, is warranted where "'the damages awarded are so small as to indicate that the jury . . . considered some improper element.'" *Sherman v. Kluba*, 734 N.E.2d 701, 704 (Ind. Ct. App. 2000) (quoting *Hudson v. Dave McIntire Chevrolet, Inc.*, 390 N.E.2d 179, 182 (Ind. Ct. App. 1979)), *trans. denied*.

[37] Here, the evidence indicated that Shirley's pain fluctuated and was often mild. Shirley was able to engage in many of the same activities that he did before the 2016 accident so long as he made adjustments. Additionally, the jury was properly instructed that it could not hold Shaver responsible to the extent that Shirley's injuries were caused solely by a preexisting condition or the 2013 accident. The jury determined that Shirley's damages totaled $8,300, which it reduced to $6,640 based on Shirley's share of the fault.

[38] Shirley argues that the damages award is inadequate because it is less than Shirley's medical bills, which totaled $15,623.61 at the time of trial. Shirley further argues that the jury must have awarded a low verdict because defense counsel invited the jury to consider the fact that Shirley was insured and that Shaver would have to pay the verdict personally.[4]

---

[4] Shirley directs us to two remarks made by defense counsel at trial. On cross examination, defense counsel asked Shirley how a "sleep study" in which he participated was paid for, and Shirley objected, which the trial court sustained. Tr. Vol. II p. 220. During closing arguments, defense counsel stated that Shaver had a right to investigate the claim against him and that Shaver was not required to merely "show up and open up the checkbook." Tr. Vol. III p. 98. Shirley objected, and the objection was overruled. Read in context, we are not persuaded that these passing statements invited the jury to consider improper bases in reaching its verdict.

This Court is not quick to infer that a jury based its decision on improper grounds, and we will not do so here. *Husainy v. Granite Mgmt., LLC*, 132 N.E.3d 486, 494 (Ind. Ct. App. 2019) ("We will not deem a verdict to be the result of improper considerations, unless it cannot be explained on any other reasonable ground." (quotation omitted)). Here, recovering Shirley's existing medical expenses was hardly a focus of Shirley's theory of damages. Shirley focused on recovering for pain and suffering and potential, future medical expenses. Indeed, in a motion in limine made before trial, Shirley indicated that he was "waiving [his] claim for medical bills, thus making the medical bills and their amount irrelevant." Appellant's App. Vol. II p. 66. Similarly, neither Shirley's insurance nor Shaver's financial responsibility for the judgment were anything close to focal points at trial. Rather, the defense argued that Shirley's injuries were due to a preexisting condition and earlier car accident, for which Shaver was not responsible, and that Shirley's pain was not severe. The jury's verdict is consistent with this theory. We will not reweigh the evidence. Accordingly, we affirm the jury's verdict.

## Conclusion

The trial court did not abuse its discretion in instructing the jury, and the jury's verdict does not warrant a new trial. Accordingly, we affirm.

Affirmed.

Pyle, J., and Foley, J., concur.